Randall Allen RANKIN, Appellant,

v.

The STATE of Texas, Appellee.

No. B14-92-00806-CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 20, 1994.

Rehearing Overruled March 10, 1994.

Catherine Clarkson, Houston, for appellant.

Julie Klibert, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

Appellant was convicted by a jury of aggravated sexual assault of a child. The jury assessed punishment at fifty years confinement in the Texas Department of Criminal Justice—Institutional Division. On appeal, Appellant raises five points of error. We affirm the judgment.

### FACTS

On June 3, 1991, Tiffiney, the complainant, her sister Wendy, and their friends Linda, Jessica and Tabitha were swimming and playing at Jessica's house. Appellant was also present. At some point in the day, Appellant offered the girls a chance to go horseback riding. Linda, Wendy and Tiffiney then took turns riding Appellant's horse.

Linda, age 7, was the first one to ride the horse. She was wearing her bathing suit and a pair of biking shorts. Appellant told her she could not ride the horse wearing her shorts, even though before, she had ridden his horse wearing those shorts. Linda removed the shorts, and Appellant threw them to the ground. When he lifted her onto the horse, Appellant placed his hands between her legs and on her "privates." On previous occasions when Linda had ridden Appellant's horse, Appellant had given her a foot boost, or she had gotten on the horse by herself. Appellant then led the horse and gave her a ride. While near a wooded area, Appellant stopped the horse and told Linda that she had an ant "down there" by the bottom part of her bathing suit. He began "picking" at her underneath her bathing suit, and touched her "privates." Linda asked to get off the horse to remove the ant, but Appellant refused to let her off. Instead, he claimed that he had removed the ant. They circled around two more times, and again Appellant told her there was an ant in the same place. He began "picking" at her "privates" and Linda asked to get off the horse. She testified that she felt very uncomfortable with Appellant picking at her.

Wendy, age 9, was the next girl to ride. When Appellant placed her on the horse, he put his hands between her legs and cuffed his hands "real tight" around her privates. Appellant rode the horse with Wendy. He began moving his hands under the elastic of her bathing suit. At one point, Appellant got his finger underneath the elastic, and started moving his finger towards the center of her "private". Wendy pretended that there was a bug on her leg, and tried to "switch" the "bug" away. She did not say anything because she was scared. On the way back to the other girls, Appellant put his hands on Wendy's breasts, claiming that there was an ant on her breasts. She "sort of" pushed his hands away. When she got off the horse, she collected her things and went home.

Tiffiney was the third girl to ride Appellant's horse. She was 7 years old at the time. Appellant picked her up and placed his hands on her "privates" to lift her onto the horse. While on the horse, Appellant sat behind her, rubbed her "boobies" and placed his finger inside her bathing suit top. He rubbed her "butt" real hard, and bent her head back and attempted to kiss her. Using an anatomically correct doll, Tiffiney demonstrated how Appellant placed his finger inside her bathing suit bottom and put his finger inside her private. She testified that it hurt "real bad" and that blood came out when he removed his finger. She told Ap-

pellant to "stop" and that she wanted "off," but Appellant "meanly" told her "no," and told her not to tell anyone about what happened. When the horse got near a fence, Tiffiney jumped off.

That night, Tiffiney and Wendy told their mother that Appellant had "touched them." The next morning, Tiffiney's mother went to Jessica's house and asked Jessica's mother if she could talk with the other girls. She agreed. Tiffiney's mother asked them "if they knew the difference between a good touch and a bad touch." They all said "yes." Then, she "asked them if the man who was over there on the horse had touched them in bad ways." Linda responded "yes." Jessica's mother and Tiffiney's mother waited until Linda's mother got home from work, and then all three women called the constable. On June 13, 1991, Detective Bassham of the Harris County Sherriff's Department interviewed Tiffiney, Wendy and Linda. In August of 1991, Tiffiney and her family moved to Odessa, Texas.

On January 13, 1992, Dr. Owen Grossman examined Tiffiney. During the examination, Tiffiney described a "bad touch" by a male. She explained that this touch was to her vagina, that it hurt, and that bleeding had occurred. She told the doctor that she had been told not to tell anyone, and had been given candy. The examination of Tiffiney's genital area revealed that the distance between the two edges of her hymen was larger by one to two millimeters than normal for a girl Tiffiney's age, and that her vaginal tissue was thin and avascular, with a different than normal appearance. Based upon his examination, it was Dr. Grossman's opinion that Tiffiney had been penetrated.

Appellant testified that he is married and has two children. He stated that he picked most of the children up from behind with his fingers on their rear ends, and then spread their legs out on the horse. He stated he did not reach up under their crotches. He claimed that he picked them up in this manner because the horse was huge, and he was not tall enough to pick them up by their arms and get them over the saddle. He stated that he did not think one of his fingers could have gone under them, but that he could be mistaken. He testified that he did not pick Wendy up in the same manner, but instead gave her a foot boost up, because she was larger. Appellant claimed that there were red ants on the trees which the girls had been climbing. Some of those ants got on Appellant, his son and the girls. He stated that he told Linda there was an ant on her leg, but made no attempt to get it off her.

Appellant's son, Allen, testified at trial. He stated that he was out in the pasture with his dad on June 3, 1991, and that his dad did not touch or rub any of the little girls. He stated that his dad did not lead the horse around, but instead he led the horse around that afternoon.

## POINTS OF ERROR

In his first point of error, Appellant claims that the trial court erred in admitting extraneous acts during the State's case in chief, before Appellant had denied the offense or impeached the complainant.

■ TEX.R.CRIM.EVID. 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. ...

Rule 404(b) is illustrative, and is neither exclusive or not exhaustive. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App.1993); and *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990). "The intent of the rule is to prevent the introduction of evidence to prove the character of a person in order to show that he acted in conformity with that character." *Bishop v. State*, 869 S.W.2d 342 (Tex.Crim.App.1993).

■ When a party attempts to adduce evidence of "other crimes, wrongs or acts," the opponent of that evidence must object in a timely fashion in order to preserve error. *Montgomery* at 387. Once the trial court determines that the evidence has relevance apart from proving conformity of character, the court has ruled on the full extent of the

404(b) objection. A further objection based upon Rule 403 is now required if the opponent wants the court to balance the probative value of the evidence against its introduction's prejudicial effect. *Montgomery* at 388. The presumption is that the probativeness "is the weightier consideration unless in the posture of the particular case the trial court determines otherwise." *Montgomery* at 388. So long as the trial court operates within the boundaries of its discretion, its decision will not be disturbed on appeal. *McFarland v. State*, 845 S.W.2d 824, 837 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Appellant's trial counsel objected that the evidence of acts committed by the defendant with Wendy and Linda violated *both* Rules 404(b) and 403. The trial court overruled both objections. Appellant complains on appeal that the trial court erred in admitting any evidence of acts committed against Wendy and Linda. The State maintains that the evidence was admissible as "res gestae" of the offense.

■ The Texas Court of Criminal Appeals recently addressed the doctrine of res gestae, (or "background evidence" as it is now called), in *Rogers v. State*, 853 S.W.2d 29 (Tex.Crim.App.1993), and *Mayes v. State*, 816 S.W.2d 79 (Tex.Crim.App.1991). *Mayes* distinguished between two types of background evidence: (1) evidence of other offenses connected with the primary offense, referred to as "same transaction contextual evidence"; and (2) general background evidence, referred to as "background contextual evidence". *Mayes* at 86–87. Character evidence offered as "background contextual evidence" is not admissible as one of the alternative purposes under Rule 404(b). *Mayes* at 88. "Same transaction contextual evidence" is admissible as an exception under Rule 404(b) *only* when such evidence is *necessary* to the jury's understanding of the instant offense. *Rogers* at 33. The crimes *must* be so intermixed that "they form an indivisible criminal transaction," such that full proof of one *can not* be given without showing the others. *Mayes* at 86–87. In this case, proof of the crime against Tiffiney

could have been shown without proof of the other acts.

■ We find, however, that the extraneous acts were admissible as evidence of a common scheme or plan. To constitute common scheme or plan, the evidence must show not only a similarity in results, but "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations." *Boutwell v. State*, 719 S.W.2d 164, 180 (Tex.Crim.App.1985), *holding limited by, Vernon v. State*, 841 S.W.2d 407 (Tex.Crim.App.1992). "The question is whether, considering similarities and distinctions, both the indicated and extraneous offenses can be logically related to a central plan, scheme or motivation." *Mares v. State*, 758 S.W.2d 932, 937 (Tex.App.—El Paso 1988, pet ref'd). In *Mares*, the admission of extraneous acts as a common scheme or plan was found to be proper when the defendant had "progressively exploited his authority and dominion ... to obtain sexual gratification." *Lazcano v. State*, 836 S.W.2d 654, 661 (Tex.App.—El Paso 1992, pet ref'd), *citing Mares*. The defendant in *Mares* utilized his students' requests for tutorial assistance to become increasingly more intimate in his contact with them.

■ In this case, the evidence shows that Appellant utilized the children's requests to ride his horse as a tool to satisfy his sexual desires. He progressively exploited his authority and dominion over the girls with each passing ride. We find that the extraneous acts were properly admitted as evidence of a common scheme or plan. We now proceed to analyze the trial court's balancing of the probative value of the evidence against its prejudicial effect. As previously noted, the presumption is that the probativeness "is the weightier consideration." *Montgomery* at 388. The trial court's ruling will only be set aside if that decision is outside the realm of the court's discretion. *McFarland v. State*, 845 S.W.2d 824, 837 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). We have reviewed the evidence, and find that the trial court did not abuse its discretion in admitting the ex-

traneous acts. Appellant's first point of error is overruled.

■ In his second point of error, Appellant claims that the trial court erred in not giving a limiting instruction at the time the extraneous acts were admitted into evidence. The court did not deny Appellant's request for a limiting instruction, but gave a standard limiting instruction regarding the extraneous offenses in the charge, rather than at the time the evidence was admitted. Tex. R.Crim.Evid. 105 provides that "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Appellant does not object to the court's instruction, but only to the timing of that instruction. Although we agree with Appellant that the better practice would be to give limiting instructions at the time evidence is admitted, Rule 105 contains no such requirement. It is left to the sound discretion of the trial court to determine when to give the limiting instruction to the jury. *Thompson v. State*, 752 S.W.2d 12, 14 (Tex. App.—Dallas 1988), *pet. dism'd*, 795 S.W.2d 177 (Tex.Crim.App.1990). We find no abuse of discretion. Appellant's second point of error is overruled.

In his third point of error, Appellant claims that the trial court committed reversible error by commenting on the evidence during the trial. During the direct examination of the complainant, the State's attorney asked the witness to show the jury, with the doll, how the Appellant placed her on the horse. The witness complied, and the State's attorney asked the court that the record reflect that the witness "was showing that the defendant lifted her up by the private area, that being the female sexual organ." The following transpired:

Defense Counsel: Well, that's not what the record reflected, your Honor.

The Court: That's exactly what the record reflects. It may not be accurate, but that's what it reflects.

Defense Counsel: I object to the Court's comment on the evidence. I object to it and ask that the jury be instructed

The Court: I did not comment. She asked that the record—since she spoke into the record, she reflected—I am not claiming that's accurate.

Defense Counsel: I'd like—I'd like to get a ruling on my objection.

The Court: I heard no objection.

Defense Counsel: My objection is—the request is you instruct the jury to disregard the Court's comment because—

The Court: If you believe, ladies and gentlemen, it was a comment on the evidence, which it was not, then don't consider it for any purpose.

Defense Counsel: I'd like a clear instruction, your Honor.

The Court: [speaking to defense counsel], excuse me just a second. Ladies and gentlemen, go with Deputy Roberson back to the jury room.

[Whereupon, the following proceedings were had outside the presence and hearing of the jury]

The Court: [speaking to defense counsel] You got what you got. It ain't enough or its is, that's all you are getting.

■ Tex.Code Crim.Proc.Ann. art. 38.05 (Vernon 1979), provides that "the judge shall not discuss or comment upon the weight" of the evidence. To constitute reversible error, a comment by the trial court must be "reasonably calculated to benefit the State or [to] prejudice the defendant's rights." *Kincade v. State*, 552 S.W.2d 832, 835 (Tex.Crim.App.1977). The Court made it clear that it was not vouching for the accuracy of the State's comment, but was merely allowing the record to reflect an in-court demonstration. The Court's comments were not "reasonably calculated to benefit the State" or the "prejudice the defendant's rights." We find no error.

■ However, even if the trial court's comments did constitute error, we find that any harm was cured when the court instructed the jury that if they found his remarks to be comments on the evidence, they should disregard his remarks. This error, if any, was not so egregious that it could not have been removed with the instruction to disregard. *Strong v. State*, 805 S.W.2d 478, 490 (Tex.App.—Tyler 1990, pet ref'd). Appellant's third point of error is overruled.

In his fourth point of error, Appellant asserts that the evidence was insufficient to prove penetration. In Appellant's brief, he falls back upon the "reasonable hypothesis" test, and argues that "the evidence does not exclude the reasonable hypothesis that Mr. Rankin simply lifted the girls onto the horse in an appropriate manner." Appellant's reliance on this test is misplaced. The Texas Court of Criminal Appeals held in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), that appellate review under the "reasonable hypothesis" test is no longer valid. The relevant question of review is now whether, "after viewing the evidence in the light most favorable to the [verdict], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 826 S.W.2d 783, 784–785 (Tex.App.—Houston [14th Dist.] 1992, pet ref'd). This standard is the same in both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). It is not the reviewing court's duty to disregard, realign or weigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). Instead, it is the province of the jury to judge the credibility of the witnesses, and to weigh the evidence. *Id.*

With the use of an anatomically correct doll, the complainant demonstrated how Appellant put his finger in her vagina. Such demonstrations are "ripe for jury consideration." *Mares v. State*, 758 S.W.2d 932, 935 (Tex.App.—El Paso 1988, pet ref'd). The Complainant testified that the Appellant put his finger in her "private;" that it "hurt;" and that there was "blood" when he pulled his finger out. The testimony of a child victim *alone* is sufficient evidence of penetration to support the conviction. *O'Hara v. State*, 837 S.W.2d 139, 142 (Tex.App.—Austin 1992, pet ref'd). Courts are to keep in mind the child's lack of technical knowledge in reviewing the sufficiency of the evidence. *Id.* We find that the Complainant's testimony is sufficient evidence of penetration. However, that is not the only evidence in this case. Dr. Grossman testified that in his medical opinion, Tiffiney had been penetrated. Her hymen and vaginal tissue were different in appearance than normal for a child her age.

Tiffiney's testimony along with Dr. Grossman's testimony constitute sufficient evidence upon which a trier of fact could find Appellant guilty beyond a reasonable doubt. *See, Peacock v. State*, 819 S.W.2d 233, 236 (Tex.App.—Austin 1991, no pet). Also, the jury apparently did not believe that Appellant's finger got inside Tiffiney's bathing suit by accident. Appellant's fourth point of error is overruled.

In his fifth point of error, Appellant complains that the prosecutor committed reversible error in her closing argument by misstating that the Complainant had made an outcry to Detective Bassham. During closing, the prosecutor stated:

Detective Bassham testified that he investigated this case for sexual abuse. Not sexual molestation, sexual abuse. That's a big difference. And that's consistent with what Tiffiney told him.

Defense Counsel: Well—

Prosecutor: Tiffiney told him—Tiffiney testified she told detective Bassham this.

Defense Counsel: Your Honor, I'm going to object to that. I am not sure that accurately reflects the evidence.

The Court: The jury heard the evidence. They will be guided thereby.

Defense Counsel: It—

Prosecutor: Tiffiney testified that she told Detective Bassham this. This isn't something that was brought up six months later. She testified and Wendy testified to that as well.

No ruling was obtained on counsel's objection and no further objection was lodged. In order to preserve error, the accused must obtain an adverse ruling from the trial court. *Ramos v. State*, 831 S.W.2d 10, 13 (Tex. App.—El Paso 1992, pet ref'd). No such ruling was obtained. Appellant's fifth point of error is overruled.

In his sixth and seventh points of error, Appellant claims that the State committed fundamental error by "denigrating the Appellant's State and Federal constitutional rights to confrontation." During the State's closing argument, the prosecutor told the jury:

He's not sitting there by chance, ladies and gentleman, He was seated there during this trial to intimidate these girls.

Appellant's trial counsel immediately objected, and the court sustained his objection, adding, "don't consider that remark for any purpose, ladies and gentlemen." Appellant received the relief he requested, and he asked for no further relief. In order to preserve error, Appellant must obtain an *adverse* ruling. *Ramos* at 13. No such ruling was obtained. On appeal, Appellant claims that the error was "fundamental." However, we find that the error, if any, was cured by the court's instruction to the jury. Appellant's sixth and seventh points of error are overruled.

 In his eighth and final point of error, Appellant contends that the trial court erred in refusing Appellant the opportunity to rebut issues raised by the State during the State's closing argument. TEX.CODE CRIM. PROC.ANN. art. 36.07 (Vernon 1981) provides "the order of argument may be regulated by the presiding judge; but the State's counsel *shall* have the right to make the concluding address to the jury." (emphasis added). The Court has considerable discretion in directing the format and order for argument. *Nelson v. State*, 828 S.W.2d 185, 187 (Tex. App.—Houston [14th Dist.] 1992, pet ref'd). Although, as Appellant states, he "was required to argue [his] theory of innocence before the State fully revealed its theory of guilt," Article 36.07 requires that the State have the right to make the concluding address. Further, such an address is not limited in scope to purely rebuttal of defensive arguments. *Nelson* at 187. In light of Article 36.07, we hold that the trial court did not err in refusing Appellant an opportunity to rebut the State's concluding remarks. Appellant's eighth point of error is overruled, and the judgment of the trial court is affirmed.