James Andrew YATES, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–96–041–CR.

Court of Appeals of Texas, Waco.

March 12, 1997.

Gregg Hill, Sims, Moore, Hill & Gannon, Hillsboro, for appellant.

Dan V. Dent, District Attorney, Hillsboro, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

A jury found Appellant James Andrew Yates guilty of the offense of murder. *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 1994). The trial court assessed Yates' punishment at sixty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

In this appeal, Yates raises six points of error alleging that the trial court erred by: (1) overruling a motion to suppress his videotaped confession; (2) refusing to allow him to inspect the sheriff department's file which was reviewed by the sheriff prior to his pretrial testimony; (3) refusing to admit this file into evidence as a business record; (4) not ordering production of certain exculpatory evidence before trial; (5) admitting evidence of extraneous offenses; and (6) admitting a videotape depicting the recovery of the victim's body. We will affirm the judgment.

## THE CONFESSION

■ In his first point, Yates contends that the trial court erroneously overruled a motion to suppress his videotaped confession. Specifically, he complains that the confession was obtained in violation of article 15.17(a) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 15.17(a) (Vernon Supp. 1997).

The record reflects that Yates and his wife, Leslie, came to the Hill County Sheriff's Department at the request of Sheriff's Lieutenant Coy West about 11:00 o'clock, a.m., on November 9, 1994 to assist West with a missing-person investigation. West was trying to locate Wendel Penney, whose mother had reported him missing on November 3. Yates talked with West, while Leslie talked with Sheriff Brent Button at the same time. West joined Leslie's interview in progress. After Button and West noted inconsistencies in Yates' and Leslie's versions of what happened, Leslie admitted that they had contrived the story which they each gave initially. She then informed the officers that she and Yates had abandoned Penney's pickup at a park in Bell County.

After considering this information, the officers determined that Yates was a suspect. At about 1:05 o'clock, p.m., Lieutenant William Kelley, Jr. read Yates his statutory warnings. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (Vernon 1979). Yates informed Kelley that he wanted to speak with a lawyer, and Kelley terminated the interview. Yates was then arrested on a warrant issued because a motion to revoke his community supervision had been filed.

Three hours later, Yates asked to speak to the officers again. When the officers met with Yates, they recorded the interview on videotape. At the beginning of the tape, Button read Yates each of the warnings required by article 38.22. The warnings were also typed on a written waiver form which Yates signed on camera. During this interview, Yates admitted that he shot Penney twice with a shotgun. He identified the location where the shooting occurred and described the circumstances surrounding the shooting.

During the next several days, the officers continued their murder investigation. They recovered Penney's body and various personal possessions of his which Yates had disposed of in different locations. They obtained an arrest warrant for the murder and served Yates with the warrant on November 14.

■ Article 15.17(a) requires an officer who has arrested a person on the basis of a warrant to take the accused before a magistrate "without unnecessary delay." TEX. CODE CRIM. PROC. ANN. art. 15.17(a). The magistrate is required to advise the suspect of the charge against him and of his *Miranda* rights. *Id.* Unless the accused demonstrates a causal connection between a failure to comply with article 15.17(a) and his decision to confess, the confession is valid. *Boyd v. State*, 811 S.W.2d 105, 124 (Tex. Crim.App.1991). Even an unreasonable delay will not invalidate an otherwise valid confession if the accused was properly informed of his *Miranda* rights. *Cantu v. State*, 842 S.W.2d 667, 680 (Tex.Crim.App.1992).

Article 42.12, section 21(b) describes the procedure to be followed when arresting a person who has violated any condition of

community supervision. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 21(b) (Vernon Supp. 1997). A person charged with violating community supervision should be confined until released on bail or until a hearing on the motion to revoke the community supervision is held. *Id.* Article 42.12, section 21(b) makes no provision for an appearance before a magistrate for the purposes set forth in article 15.17(a).

 Community supervision revocation hearings are not criminal trials. *Bowen v. State,* 649 S.W.2d 384, 386 (Tex.App.—Fort Worth 1983, pet. ref'd). Such hearings are administrative in nature and do not result in a conviction. *Id.* Rather, the hearing results in "a finding upon which the court may exercise its discretion by revoking or continuing [community supervision]." *Id.* Texas courts have consistently held that the procedures normally attendant to the arrest of an accused person and the preliminary proceedings which follow do not apply in the same manner to a person charged with a community supervision violation. *See, e.g., Whisenant v. State,* 557 S.W.2d 102, 105 (Tex.Crim.App. 1977) (person accused of community supervision violation not entitled to examining trial); *Ex parte Ainsworth,* 532 S.W.2d 640, 640–41 (Tex.Crim.App.1976) (person accused of community supervision violation has no constitutional right to pre-hearing bail); *McDaniel v. State,* 158 Tex.Crim. 301, 302, 254 S.W.2d 785, 785 (1953) (community supervision law does not require that notice of violations be given at least 2 days before hearing as was required for service of indictments at that time).

Article 15.17(a) does not apply to Yates' arrest for the alleged violation of his community supervision. Article 42.12, section 21(b) governs that arrest. His electronically recorded confession was obtained in accordance with article 38.22, section 3. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon Supp. 1997). For these reasons, we overrule his first point of error.

1. Yates actually cited Rule 614. He now claims that the context of his argument to the court following the request made it apparent that his request was based on Rule 611. Since the State does not contest this, we will treat Yates' request

## THE SHERIFF DEPARTMENT'S FILE

 Yates' second and third points involve the file assembled by the Hill County Sheriff's Department during its investigation of the case. In his second point, Yates claims the court erred in denying him the opportunity to inspect the file after Button used it to refresh his memory prior to testifying at a pretrial hearing. His third point complains about the court's refusal to admit the file as a business record.

At the hearing on Yates' motion to suppress, Button testified that he had reviewed the case file in preparation for the hearing. Yates then requested that he be allowed to review the file under Rule 611 of the Rules of Criminal Evidence.[1] *See* TEX.R.CRIM. EVID. 611. Upon further inquiry by the court, Button testified that he had "browsed" the entire file to refresh his recollection of the pertinent date and times.

The trial court allowed the State a brief recess during which the prosecutor and Button examined the file to determine what Button had "actually" reviewed. After this, the State provided Yates with a single sheet of paper containing photocopies of seven brief excerpts from the file. These excerpts reflect various times on November 3 apparently determined by the State to be pertinent to the interviews of Yates and Leslie. The excerpts read as follows:

SUPPLEMENT REPORT (19897.1)

Case Number: H94003 by Officer 523 (VOGT, PAUL) 11/06/94 11:50 am

ON 11/03/94 AT APPROXIMATELY 11:50 A.M.[2]

At approx. 12:40 p.m. Lt. West joined the interview

At approx. 1:00 p.m. Lt. West requested Capt. Vicars of the Hill County Sheriff's Department attempt to locate White Flint

as one made under Rule 611. *See Tallant v. State,* 742 S.W.2d 292, 294 (Tex.Crim.App.1987).

2. There is a handwritten notation questioning whether the 3rd is the correct date.

At approx. 1:03 p.m. Lt. West and Lt. Kelley discussed both

At approx. 4:00 p.m. Lt. West was advised that Jimmy Yates was requesting to talk to officers because he wanted to give a statement

At approx. 1:15 p.m. Lt. West began obtaining a written statement from Leslie Yates

At approx. 4:30 p.m. Yates was transferred (sic) Facility to the Sheriff's Office

The court allowed Button to testify further that these matters were the only things he truly used when he reviewed the file in preparation for the hearing. On cross-examination, Yates laid the predicate to offer the file as a business record. *See* TEX.R.CRIM. EVID. 803(6).

Instead of ruling on this proffer, the court directed Button to produce the documents he reviewed in preparation for his testimony for purposes of a Rule 611 in-camera hearing. The court then ordered that these items be provided to Yates and that the remainder of the file be placed in the record for appellate review. The court refused to rule on Yates' business record proffer but noted his objection to this failure to rule.

■ Rule 611 provides that an opposing party is entitled to production of writings used to refresh a witness' memory. TEX. R.CRIM. EVID. 611. If the party sponsoring the witness claims "that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto." *Id.* In-camera review of the entire writing at issue is mandatory under Rule 611. (*See Marsh v. State,* 749 S.W.2d 646, 648–49 Tex.App.—Amarillo 1988, pet. ref'd).

Button clearly stated that he had scanned the whole file in preparation for the hearing. The trial court erred because it refused to personally review the entire file in camera. We must determine whether this error contributed to Yates' conviction or punishment. TEX.R.APP. P. 81(b)(2).

■ In assessing harm, we review the evidentiary value of the file under Rule 611.

*Robertson v. State,* 871 S.W.2d 701, 709 (Tex. Crim.App.1993). Documents admitted under Rule 611 are admitted for impeachment purposes rather than as substantive evidence. *Id.* Thus, we review them for impeachment value.

We have reviewed the entire file. We find nothing in it which contradicts Button's testimony at the pretrial hearing. Instead, the file supports Button's testimony. Because the file had no impeachment value, we find beyond a reasonable doubt that its exclusion did not contribute to Yates' conviction or punishment. The court's failure to examine the entire file was harmless. We overrule Yates' second point.

■ In Yates' third point, he refers the Court only to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 19 of the Texas Constitution as authorities.

Rule 74(f) of the Rules of Appellate Procedure requires counsel to include in their briefs "such discussion of ... the authorities relied upon as may be requisite to maintain the point at issue." TEX.R.APP. P. 74(f). The failure to adequately brief the argument and provide authority to support a particular point of error waives the complaint. *Lawton v. State,* 913 S.W.2d 542, 558 (Tex.Crim.App. 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); *Menchaca v. State,* 901 S.W.2d 640, 649–50 (Tex.App.—El Paso 1995, pet. ref'd).

The jurisprudence surrounding an issue so frequently litigated as due process under the Fourteenth Amendment or due course of law under the Texas Constitution is vast. When a party seeks review of an issue related to either of these provisions, citation of more direct authorities is required to properly present the matter for appellate review. *See Menchaca,* 901 S.W.2d at 650 n. 7.

Because Yates has inadequately briefed his third point of error, we overrule it.

## EXCULPATORY EVIDENCE

■ Yates avers in his fourth point that the court erred in not ordering the produc-

tion of an exculpatory tape recording prior to trial.

The court granted Yates' pretrial motion for in-camera inspection and production of exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). The court examined the sheriff department's file pursuant to the motion. Three days before trial, the court sent a letter to the parties informing them that a tape recording in the file which contained a conversation with an unidentified medical examiner was potentially exculpatory. The court did not order the State to provide Yates with a copy of the recording.

In response, Yates filed an additional motion seeking production of the recording. The court heard this motion prior to voir dire on the first day of trial and denied the motion. The next day, the court modified its decision and allowed Yates to hear the recording. The tape was identified as a recording of a conversation between Button, West, and Dr. Sheila Spotswood, the medical examiner. Yates claims the recording is exculpatory because West asked Spotswood to re-examine the exit wounds on the body to confirm the State's theory that Penney was lying on the ground when Yates shot him in the chest.

Spotswood testified on the third day of trial. On cross-examination, she did not recall her conversation with the officers concerning the exit wounds. She testified that she did not reexamine the body. Outside the jury's presence, Yates played the recording for Spotswood to refresh her memory. After hearing the tape, Spotswood still did not remember the conversation. Based on the recording, however, she conceded that she must have re-examined the exit wounds.

 At that point Spotswood was excused without objection. Yates moved for a mistrial because of the delay in the disclosure of the recording. The court denied the motion.

> When the prosecution fails to disclose *Brady* material until after the trial has commenced, the inquiry is whether the defendant was prejudiced by the tardy disclosure. If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been.

*Palmer v. State,* 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (quoting *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir.1985)).

 The disclosure of *Brady* material at trial gives the accused an opportunity to request a continuance to review the evidence. This opportunity "adequately satisfies [the] due process requirements of *Brady.*" *Payne v. State,* 516 S.W.2d 675, 677 (Tex.Crim.App. 1974); *accord Aguirre v. State,* 683 S.W.2d 502, 516 (Tex.App.—San Antonio 1984, pet. ref'd). The failure to request a continuance waives any *Brady* violation. *See Zule v. State,* 802 S.W.2d 28, 33 (Tex.App.—Corpus Christi 1990, pet. ref'd).

Yates never requested a continuance after he learned of the contents of the recording. Spotswood, Button, and West all testified after he first heard the recording. Despite Spotswood changing her testimony outside the presence of the jury, Yates chose not to question her before the jury about this. Neither did he seek to offer the recording in evidence to impeach her testimony. Under these circumstances, we cannot say that the delayed disclosure hindered his ability to effectively use the evidence at trial. Thus, we overrule his fourth point.

## EXTRANEOUS OFFENSES

Yates' fifth point complains of the court's admission of evidence of two incidents he claims were extraneous to the murder charge. Yates objected to the admission of any evidence regarding his taking, dismantling, and abandoning of Penney's truck or of his later burial of Penney's body in a barn on the property of Ann Yates, his mother. The court granted a running objection to this evidence.

Betty Penney, the victim's mother, was the State's first witness. She identified eight photographs of Penney's truck as it appeared after Yates dismantled and abandoned it. The State did not offer these exhibits in

evidence at that time, however. Betty also identified the keys to the truck, which were admitted over Yates' objection.

Bruce Ward, a mutual acquaintance of the Yates and Penney, and Leslie both testified that they saw Yates and Penney together the same day Penney disappeared. That evening Ward and Leslie saw Yates driving Penney's truck. Yates told them Penney was tied to a tree. According to Leslie, Yates and she hid Penney's truck on Ann's property that same evening. Later that night, they took the truck to a friend, Mac's, home in a community in Coryell County known as The Grove.

Leslie testified that Yates painted the pink bumpers of Penney's truck black that same night. Yates parked the truck behind a barn at Mac's house. The next night they returned to the scene of the shooting and retrieved the body. Yates buried the body in a barn on Ann's property that night.

They returned to Mac's house the next day and stayed there two days. Leslie testified that during this stay Yates removed the stereo and other equipment from Penney's truck. He then abandoned the truck at White Flint Park in Bell County. Yates and Leslie dumped the back windshield from the truck at Mother Neff State Park in Coryell County. Yates also buried Penney's wallet, checkbook, and other papers underneath a rock at Mother Neff. They stored the stereo equipment in a building on Ann's property.

In his confession, Yates confirmed that he had abandoned the truck in Bell County. He also admitted that he had buried the body in the barn and Penney's wallet beneath a rock at another location.

Several officers testified to the recovery of Penney's truck and other personal items from the parks. Kelley testified about retrieving Penney's keys from a jeep on Ann's property after Yates told him the keys were there and signed a consent to search for them. The officers also testified about the recovery of Penney's body from the barn. Texas Ranger Matt Cawthon testified that he

located a crushed Miller Lite beer can beneath the body during the exhumation.[3]

## SAME–TRANSACTION EVIDENCE

 The facts and circumstances surrounding the commission of an offense are relevant. *Mayes v. State*, 816 S.W.2d 79, 85 (Tex.Crim.App.1991). Evidence of how the offense developed and progressed is necessary for the jury to have a complete picture of what occurred. *Burks v. State*, 876 S.W.2d 877, 900 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Mann v. State*, 718 S.W.2d 741, 744 (Tex.Crim.App.1986). This type of evidence has been labeled as "same transaction contextual evidence." *Mayes*, 816 S.W.2d at 86.

 Rule 404(b) of the Rules of Criminal Evidence prohibits the State from introducing evidence of extraneous offenses to show the accused's bad character and "propensity" to commit criminal acts. TEX.R.CRIM. EVID. 404(b). Same-transaction evidence is admitted as an exception to this rule because such evidence is inextricably intertwined with the offense charged and as a result, "proof . . . of [the charged offense] cannot be given without showing the [uncharged offense]." *Mayes*, 816 S.W.2d at 86 n. 4 (quoting *Nichols v. State*, 97 Tex.Crim. 174, 260 S.W. 1050, 1051 (1924)).

> "Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven. As such, it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged."

*Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim.App.1993) (citation omitted). For this reason, the State need not establish that such evidence is "relevan[t] apart from character conformity." *Houston v. State*, 832 S.W.2d 180, 183 (Tex.App.—Waco 1992), *pet. dism'd improvidently granted*, 846 S.W.2d 848 (Tex. Crim.App.1993).

---

3. Yates makes a specific complaint about the inflammatory nature of the beer can testimony. However, we note that aside from the exhuma- tion video, the beer can was not again mentioned until the State's argument in the punishment phase of the trial.

In *Camacho*, the court described another type of extraneous event which is admissible as same-transaction evidence. Circumstances surrounding the commission of the offense which are probative of the allegations in the indictment are not extraneous offenses. *Camacho*, 864 S.W.2d at 532 (quoting *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App.1991). Such circumstances should be distinguished from unconnected extraneous offenses which are governed by Rule 404(b). *See, e.g., Robinson v. State*, 844 S.W.2d 925, (Tex.App.—Houston [1st Dist.] 1992, no pet.) (evidence of assault of 70 year-old man with shovel admissible under Rule 404(b) to prove intent of accused charged with assaulting 77 year-old man with iron and/or hammer and to rebut self-defense claim). The court concluded that circumstances surrounding the commission of the offense which are probative of the State's allegations are also same-transaction evidence. *Camacho*, 864 S.W.2d at 532.

The circumstances which the court considered in *Camacho* were the subsequent murders in Oklahoma of two victims kidnapped in Dallas. Camacho was tried for capital murder in Dallas. The indictment alleged that he killed Sam Wright while in the course of committing burglary. After shooting Wright, Camacho and his accomplices kidnapped Wright's wife and son and took them to Oklahoma. Four days later they murdered the wife and son. *Camacho*, 864 S.W.2d at 527, 532. Camacho complained that evidence of the kidnapping and subsequent murders should have been excluded under Rule 404(b).

The court found that the kidnapping evidence was same-transaction evidence. *Camacho*, 864 S.W.2d at 532. The court held that "[s]uch evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Id.* (citing *Mayes*, 816 S.W.2d at 86).

■ The court found the murder evidence to be same-transaction evidence under a different rationale. The court determined that the murders were circumstances of the offense which were probative of Camacho's intent during the burglary. *Camacho*, 864 S.W.2d at 532 (citing *Ramirez*, 815 S.W.2d at 643). The court concluded that evidence of such "relevant" circumstances is also same-transaction evidence. *Id.*[4]

■ Thus, we perceive two distinct bases for the admission of same-transaction evidence. One occurs where the evidence of an extraneous event is significantly "blended or interwoven" with the facts of the charged offense: "*a la Mayes.*" The other arises when the extraneous event tends to prove the allegations of the charged offense: "*a la Ramirez.*"[5]

### 1. Penney's Truck

■ The evidence of the taking, dismantling, and abandoning of Penney's truck and other personal items falls within the latter of these categories. This evidence was a circumstance surrounding the commission of the offense which was probative of Yates' intent and his consciousness of guilt.[6] *See*

---

**4.** Remoteness in distance and time should be a factor in determining whether such evidence is a part of the same transaction. However, remoteness is not the only factor to be considered. In fact, the Court of Criminal Appeals has found a legally distinct and arguably remote offense to be part of the same transaction as the charged offense on at least two occasions. *Santellan v. State*, 939 S.W.2d 155 168 (Tex.Crim.App.1997) (*abuse of corpse occurring during two day period following murder*); *Camacho*, 864 S.W.2d at 532 (murders which occurred four days later and in another state).

**5.** The Court of Criminal Appeals has employed both theories to justify the admission of evidence of extraneous offenses as same-transaction evi-

dence. *See, e.g., Santellan*, 939 S.W.2d at 168 (evidence of abuse of corpse same-transaction evidence because it was probative of the accused's "motive, plan, and intent" and because it was "blended or interwoven" with the charged offense).

**6.** Yates' intent was a central issue in the trial. The jury charge submitted not only the murder offense, but also the lesser included offenses of manslaughter and criminally negligent homicide. Yates' closing argument devoted much attention to the question of whether the shooting was intentional, reckless, or negligent.

*Camacho,* 864 S.W.2d at 532; *Bigby v. State,* 892 S.W.2d 864, 883 (Tex.Crim.App.1994). Therefore, this evidence was admissible as same-transaction evidence.

### 2. Penney's Burial

■ Yates' subsequent burial of Penney's body fits within both categories. Because it involved the body of the same victim, the burial evidence is significantly intertwined with the charged offense. *Santellan,* 939 S.W.2d at 168. Because the burial is a circumstance surrounding the offense which provides useful insight into Yates' intent, it is not an extraneous offense. *Id.*; *Camacho,* 864 S.W.2d at 532. Thus, this evidence was part of the same transaction as the murder for which Yates was on trial.

Although a legally distinct offense, Yates' burial of the body was significantly intertwined with the indicted offense "and was 'essential to understanding the context and circumstances' of the crime charged." *Santellan,* 939 S.W.2d at 168 (quoting *Camacho,* 864 S.W.2d at 532). Thus, the evidence is part of the same transaction as the murder with which Yates is charged.

### RULE 403

■ Yates also objected to this evidence under Rule 403 of the Rules of Criminal Evidence. TEX.R.CRIM. EVID. 403. He contends that by merely overruling his objection, the court failed to conduct the balancing test required by the rule. *See Montgomery v. State,* 810 S.W.2d 372, 389–90 (Tex.Crim. App.1990) (on rehearing).

However, *Montgomery* does not require that the court perform this balancing test in a formal hearing on the record. *Houston,* 832 S.W.2d at 184. "The *Montgomery* court merely recognize[d] that appellate review would be made easier if the trial court would list the reasons for its decision in the record." *Id.* By overruling the Rule 403 objection, the court necessarily conducted the balancing test when it considered the objection. *Id.*; *accord Caballero v. State,* 919 S.W.2d 919, 922 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd); *Menchaca,* 901 S.W.2d at 648–49; *Nolen v. State,* 872 S.W.2d 807, 812 (Tex.App.—Fort Worth 1994, pet. ref'd).

■ Factors to be considered in this balancing process include:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable . . .;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Santellan,* 939 S.W.2d at 169 (citing *Montgomery,* 810 S.W.2d at 389–90).

■ While same-transaction evidence does not fall within the ambit of Rule 404(b), the court must nevertheless test its admissibility under Rule 403 when called upon to do so. *Mann,* 718 S.W.2d at 744. Rarely will the potential prejudice of such evidence render it inadmissible, however. *Houston,* 832 S.W.2d at 183.

### 1. Penney's Truck

■ We have concluded that the evidence concerning Penney's truck was relevant to Yates' intent and consciousness of guilt. As such, it is presumed admissible under Rule 401, even when a Rule 403 objection is made. *Montgomery,* 810 S.W.2d at 390; TEX.R.CRIM. EVID. 401, 403. We review the court's decision under an abuse of discretion standard and defer to the court's ruling so long as it lies "within the zone of reasonable disagreement." *Montgomery,* 810 S.W.2d at 391.

Because same-transaction evidence is rarely excluded on account of unfair prejudice and because we believe the court's determination was "within the zone of reasonable disagreement," we hold that the court did not abuse its discretion in admitting the evidence regarding the taking, dismantling, and abandoning of the truck. TEX.R.CRIM. EVID. 403.

### 2. Penney's Burial

■ We have also concluded that the evidence concerning the burial of Penney's body was relevant to Yates' intent as well as the manner and means by which he committed the offense. This evidence was strong: Yates' confessed to the burial, Leslie testified to the burial, the exhumation corroborated this aspect of his confession, and the medical evidence corroborated his confession regarding the manner and means of the offense.

On the other hand, we may reasonably presume that the jury was repulsed by the manner in which Yates' disposed of the body. The State devoted a significant portion of the trial to this event. However, this evidence was vital to the State's allegation that Yates intentionally killed Penney.[7] It was even more essential to establishing the manner and means of the commission of the offense.[8] Based on these considerations, we cannot say that the court abused its discretion in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of this evidence. *Id.*

For these reasons, we overrule Yates' fifth point of error.

### THE EXHUMATION VIDEOTAPE

■ By his sixth point, Yates complains of the court's admission of the video recording depicting the exhumation of Penney's body. When Yates objected to the videotape, the court reviewed the tape outside the jury's presence to determine its admissibility. After viewing the tape, the court determined that the State could play the tape for the jury, but required that the jury not be allowed to hear the audio portion of the tape. Yates contends that the prejudicial nature of the video substantially outweighs any probative value it may have. *See* TEX.R.CRIM. EVID. 403.

■ Rule 403 governs the admissibility of video evidence alleged to be unduly

---

7. See note 6, *supra.*

8. Yates' confession was the only evidence that he had shot Penney. It would be impractical to suggest that the State could have offered the autopsy evidence without offering evidence of

prejudicial. *Sonnier v. State,* 913 S.W.2d 511, 518 (Tex.Crim.App.1995). Several factors are weighed to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, including:

> the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed [,and] ... the availability of other means of proof and the circumstances unique to each individual case.

*Emery v. State,* 881 S.W.2d 702, 710 (Tex. Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995) (quoting *Long v. State,* 823 S.W.2d 259, 272 (Tex. Crim.App.1991)). If a verbal description of an object or scene is admissible, then a photograph of that object or scene is generally also admissible. *Emery,* 881 S.W.2d at 710.

Videotape evidence is generally not cumulative of still photographs because it presents a three-dimensional perspective. *Flores v. State,* 915 S.W.2d 651, 652 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Such evidence aids the jury in visualizing the scene and the witnesses' accounts of what happened. *Price v. State,* 870 S.W.2d 205, 208 (Tex.App.—Fort Worth 1994), *aff'd,* 887 S.W.2d 949 (Tex.Crim.App.1994); *accord Gordon v. State,* 784 S.W.2d 410, 412–13 (Tex.Crim.App.1990).

We have already determined that testimony describing the exhumation was admissible. The videotape depicts the following: (1) the officers removing several hay bales; (2) the officers carefully unearthing the body; (3) that the body was wrapped in a black tarp which the officers removed; (4) the decomposition of Penney's body which had occurred over the six days after he was killed; and (5) Penney's body was fully clothed when it was recovered. The video does not, however, depict anything not already testified to by

---

how the body was recovered. It would be equally impractical to allow the State to show the recovery of the body without introducing evidence of how the body got there. To hold otherwise, would be to invite unnecessary and potentially prejudicial speculation from the jury.

the State's witnesses or depicted by still photographs already in evidence.

While the videotape is gruesome to some extent, it demonstrates the brutal nature of the offense committed. Thus, we overrule Yates' sixth point of error.

We affirm the judgment.

VANCE, Justice, concurring.

I agree with the decision to affirm the judgment. I am still troubled, however, by the holding that merely overruling a Rule 403 objection means that the trial court "necessarily conducted the balancing test when it considered the objection."

I continue to believe that the Court of Criminal Appeals, in deciding *Montgomery v. State,* intended that the trial judge engage in the balancing process under Rule 403 in such a way that the decision can be subjected to meaningful appellate review. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App. 1990) (on rehearing); *Houston v. State.* 832 S.W.2d 180, 187 (Tex.App.—Waco 1992) (Vance, J. dissenting), *pet. dism'd improvidently granted,* 846 S.W.2d 848 (Tex.Crim. App.1993).

In discussing the duty of the trial court when confronted with a Rule 403 objection, the Court of Criminal Appeals stated:

> Rather, we understand Rule 403 to impose a duty upon the trial court. The court would do well to inquire of the opponent what his view of the prejudice is. On the other hand, the court should ask the proponent to articulate his need. But once the rule is invoked, "the trial judge has no discretion as to whether or not to engage in the balancing process." [22 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5250, at 544–45 (1978) ]. When Rule 403 provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," it simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence.

. . .

When a further objection is made under Rule 403, it will not suffice for the trial court simply to determine that the evidence is relevant to some legitimate, non-character-related purpose such as one of those enumerated in Rule 404(b). "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Advisory Committee's Note to Fed.R.Evid. 404(b). Factors that should go into the balancing are elaborated in *Wright & Graham,* supra, at 545–551. How compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence—in other words, its inherent probativeness—is certainly a factor. This is often, although by no means invariably, a function of the similarity of the extraneous transaction to the charged offense. See *Robinson v. State,* 701 S.W.2d 895, at 898 (Tex.Cr.App.1985); Imwinkelried, Uncharged Misconduct Evidence, §§ 2:12, 8:07 (1984). It is also a function of the strength of the proponent's evidence to show the opponent in fact committed the extraneous conduct. *Wright & Graham,* supra at 548. Another obvious factor is the potential the "other crimes, wrongs, or acts" have to impress the jury in some irrational but nevertheless indelible way. This is often a function of the nature of the misconduct. *Imwinkelried,* supra, § 8:03. How much trial time does the proponent need to develop evidence of the extraneous misconduct, such that the attention of the factfinder will be diverted from the indicted offense? *Id.; Wright & Graham,* supra, at 549. Finally, how great is the proponent's *"need"* for the extraneous transaction? This last inquiry breaks down into three subparts: Does the proponent have other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute? When the proponent has other compelling or undis-

puted evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance. *Morgan v. State,* [692 S.W.2d 877, 880 (Tex.Crim.App.1985)]; *United States v. Beechum,* [582 F.2d 898, 914 (5th Cir. 1978)]; *Wright & Graham,* supra, at 546–47.

*Id.* at 389–90 (emphasis in original).

In discussing appellate review of the trial court's decision under Rule 403, the court continued:

> The appellate court should not conduct a *de novo* review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." *United States v. Maggitt,* 784 F.2d 590, 597 (C.A.5 1986).
>
> But reviewing the trial court's judgment for abuse of discretion requires more of an appellate court than deciding that the trial judge did in fact conduct the required balancing and did not simply rule arbitrarily or capriciously. The appellate court must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made.

*Id.* at 392 (emphasis in original).

Most recently, the Court criticized the Fourteenth Court of Appeals' determination of a Rule 403 question:

> The court failed to detail the evidence it used in arriving at its conclusion. In fact, it is difficult to find much Rule 403 analysis at all in the five sentences the Court of Appeals dedicated to that question. Although the Court of Appeals properly rec-

ognized that, when conducting a Rule 403 balancing test, the "probativeness" of the evidence "is the weightier consideration," the court failed to discuss the factors necessary for a comprehensive Rule 403 analysis. *Rankin [v. State,* 872 S.W.2d 279, 283–84 (Tex.App.—Houston [14th Dist] 1994)]. As this Court has previously stated, and we now reiterate, a complete Rule 403 balancing test demands an inquiry as to all the factors set out in *Montgomery,* 810 S.W.2d at 389–90, 392–93. Their job, however, does not end there. They must also, consistent with *Arcila [v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992)], fully account for all the evidence relevant to their 403 analysis.

*Rankin v. State,* —— S.W.2d ——, No. 0374–94, slip op. at 6 (Tex.Crim.App. April 10, 1996).

In view of the Court's delineation in *Montgomery* of certain "factors"[1] that bear on the trial judge's decision and its admonishment to appellate courts not to conduct a *de novo* review, how can a court of appeals comply with the mandate of *Rankin?* I find only one way: require that the trial court's balancing process be, to some extent, disclosed by the record. Thus, I would sustain point of error five as it relates to Rule 403.

Having said that I would sustain point five, I must address the question of harm. As the majority points out, the two extraneous offenses were admissible under the "other purpose" provisions of Rule 404(b). Tex.R.Crim. Evid. 404(b). Applying the *Harris* factors relating to harm and the *Montgomery* factors relating to Rule 403, I would hold that the court's failure to engage in the balancing process under Rule 403 was harmless because, had the court done so, it would have concluded that the probative value of the evidence was not substantially outweighed by

---

**1.** Factors that may be used in the balancing process include (1) the inherent probative value of the evidence, (2) the similarity of the conduct to the offense on trial, (3) the strength of the evidence of the extraneous conduct, (4) the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways, (5) the trial time necessary to develop the evidence, giving consideration to whether the jury's attention will be diverted from the offense on trial, and (6) the State's "need" for the evidence including (a) the availability of other evidence which tends to accomplish the same "other purpose," (b) the strength of the other evidence, and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute. *Montgomery v. State,* 810 S.W.2d 372, 389–90 (Tex.Crim.App. 1990).

the dangers set out in the Rule. *Id.* 403; *Montgomery,* 810 S.W.2d at 389; *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). Thus, I agree that the judgment should be affirmed.