NO.
12-04-00354-CR

 

                     IN THE COURT
OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

DOROTHY ANN LATHAM,                            '     APPEAL
FROM THE 273RD

APPELLANT

 

V.                                                                         '     JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                       '     SAN
AUGUSTINE COUNTY, TEXAS

                                               
                                                                                                            

                                                      MEMORANDUM
OPINION

Dorothy
Ann Latham was convicted of theft of property of more than $100,000.00, a
second degree felony, and was sentenced to ten years of imprisonment.  Appellant raises four issues on appeal.  We affirm.

 

Background








Appellant
met the victims, R.D. and Jewel Turner, through her daughter and codefendant,
Debbie Sue Jacks.[1]  Jacks initially worked a few hours each week
caring for the Turners, an elderly couple in their eighties.  However, when the Turners= health began declining, their son[2]
Robert requested that Jacks work full time. 
Eventually, several other caregivers were hired to provide care twenty-four
hours a day, seven days a week. 

Based
upon reports Robert received from Elaine Coulter, one of the Turners= caregivers, Robert fired Jacks.  He then contacted the Texas Department of
Family and Protective Services, Adult Protective Services division (APS), and
drove to the Turners=
home to assess the situation.  He stated
that Mrs. Turner handled the couple=s
financial matters and kept all financial or business documents organized in
files located in a filing cabinet.  After
an exhaustive search, he was unable to find all of the recent records.  After reviewing the records that he found, he
was shocked at the number and dollar amounts of checks written to Appellant and
Jacks.  Although Mrs. Turner defended
Appellant and Jacks, Robert pointed out that his mother was adamant that all of
her money was still in her accounts even after the accounts had been
depleted.  At the time of trial, Mr.
Turner had died and Mrs. Turner was in a nursing home, suffering from advanced
Alzheimer=s.

Rhonda
Brooks, a certified adult protective services supervisor for APS, investigated
the Turners= case
after Elaine Coulter reported her observations to Robert Turner.  At trial, Brooks talked about the markers
that suggest exploitation of the elderly. 
Brooks testified that she found evidence of each marker in this case,
describing the situation as Aa
textbook case of exploitation.@
During her investigation, Brooks found more than sixty-five checks had been
written to Appellant, Jacks, or to third parties for the benefit of Appellant
and Jacks.  Brooks concluded that the
Turners= case was
financial exploitation based on undue influence.  

On
April 25, 2001, the San Augustine County grand jury indicted Appellant for
theft of  more than $100,000.00 but less
than $200,000.00.  Appellant pleaded not
guilty and was tried before a jury.[3]  The jury convicted Appellant of the crime as
charged, sentenced her to ten years of imprisonment, and assessed a $10,000.00
fine.  The trial court overruled
Appellant=s motion
for new trial, and this appeal followed.

 








                                                      Perjured
Testimony

In
her first issue, Appellant asserts that her due process rights were violated
when the State Aused
perjured testimony from Ramona Coulter and did not correct the perjured
testimony.@

Discussion

The
Fourteenth Amendment prohibits the knowing use of perjured testimony by the
prosecution.  Vasquez v. State,
67 S.W.3d 229, 239 (Tex. Crim. App. 2002) (citing United States v.
Bagley, 473 U.S. 667, 678-79, 105 S. Ct. 3375, 3381-82, 87 L. Ed. 2d
481 (1985) (due process violation is established if the prosecutor knowingly
uses perjured testimony and the reviewing court cannot determine beyond a
reasonable doubt that the testimony was harmless)).  Even when the prosecutor does not instigate
the perjury, he is obligated to correct any perjured testimony given by one of
his witnesses.  Id.  

At
trial, Ramona Coulter testified that she saw Debbie Jacks pressure Mrs. Turner
to write a check for $1,500.00 to Appellant. 
Specifically, Ramona stated that prior to her employment with the
Turners, she went to their house to visit her mother who worked there at the
time.  When she arrived, Appellant,
Jacks, and Mrs. Turner were on the back porch. 
Jacks told Mrs. Turner that she would not take her to see Mr. Turner in
the nursing home if Mrs. Turner did not sign the $1,500.00 check to
Appellant.  On cross examination,
Appellant=s counsel
informed Ramona that there was no $1,500.00 check payable to Appellant in
evidence.  Ramona replied that she could
only testify to the fact that the check had been written.  She did not know if it was cashed.  She specifically stated that she never saw
the check again and did not know what became of it.

Appellant
claims that since no processed check for $1,500.00 payable to Appellant was
produced, Ramona was Alying@ about it.  However, there is nothing in the trial record
to support Appellant=s
position that Ramona knowingly offered perjured testimony at trial or that the
prosecutor knew or believed that it was perjured testimony.  Consequently, we overrule Appellant=s first issue.

 

Brady Violation

Appellant
urges that her conviction should be reversed because the State failed to
disclose Ramona Coulter=s
criminal convictions prior to trial, which was constitutional error.

 








Discussion

The
State has an affirmative duty under the Due Process Clause to disclose
exculpatory or impeachment evidence that is material to guilt or
punishment.  See Bagley,
473 U.S. at 676, 105 S. Ct. at 3380; Brady v. Maryland, 373 U.S.
83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963).  A violation of the State=s duty occurs when a prosecutor fails
to disclose evidence that is favorable to the accused and which creates a
probability sufficient to undermine confidence in the outcome of the
proceeding.  Thomas v. State,
841 S.W.2d 399, 407 (Tex. Crim. App. 1992). 
In Brady, the Court held that the State=s suppressing material evidence
favorable to the accused, upon the accused=s
request for the evidence, denies the accused due process of law under the
Fourteenth Amendment of the United States Constitution, irrespective of the
State=s good or
bad faith in withholding the evidence.  See
Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97; see also U.S. Const. amend. XIV.  Withheld evidence is material if there is a
reasonable probability that the proceeding=s
outcome would have differed had the evidence been disclosed.  See Bagley, 473 U.S. at 681-82,
105 S. Ct. at 3383.  When the withheld
evidence is disclosed during trial, the inquiry is whether the defendant was
prejudiced by the delayed disclosure.  See
Yates v. State, 941 S.W.2d 357, 364 (Tex. App.BWaco 1997, pet. ref=d). 
If the defendant received the withheld material in time to put it to
effective use at trial, her conviction should not be reversed simply because it
was not disclosed as early as it might or should have been.  See Givens v. State, 749
S.W.2d 954, 957 (Tex. App.BFort
Worth 1988, pet. ref=d).








During
the State=s cross
examination of Ramona, she stated that her current address is TDC.  She explained that her probation was revoked
when she was caught driving under the influence of crack cocaine with her
daughter.  The underlying felony
conviction was for theft of livestock. 
During continued questioning, Ramona also revealed that she had been
convicted for credit card abuse in 1993. 
After questioning that comprises fourteen pages of the reporter=s record, Appellant requested a list of
Ramona=s
convictions.  A hearing was held outside
the jury=s presence.  Appellant then moved for a mistrial, which
the court denied.  After more
questioning, counsel for Jacks objected to a Brady violation and
joined in Appellant=s motion
for mistrial.  The court again denied the
motion, but ordered the sheriff to Arun
a rap sheet@ on
Ramona.  The court advised counsel that
the witness would be available to testify after all parties had received the
NCIC (National Crime Information Computer) report.  In the jury=s
presence, the court allowed questioning to continue about crimes involving
moral turpitude occurring within the last ten years.  The next day, after receiving the NCIC
report, Appellant was permitted to question Ramona further about the contents
of the NCIC report.  Appellant did not
request a continuance.

When
the evidence withheld in violation of Brady is disclosed at
trial, the defendant=s
failure to request a continuance waives the error or at least indicates that
the delay in receiving the evidence was not truly prejudicial.  See Young v. State , 183 S.W.3d
699, 705-06 (Tex. App.BTyler
2005, pet. ref=d)
(failure to request continuance waived Brady error); Davis
v. State, 992 S.W.2d 8, 12 (Tex. App.BHouston
[1st Dist.] 1996, no pet.) (failed to show prejudice from the tardy
disclosure).  Appellant did not request a
continuance.  Moreover, Appellant
received the witness=s
complete criminal history and questioned Ramona further after receiving the
NCIC report in the jury=s
presence.  Consequently, Appellant waived
the error.  See Young, 183
S.W.3d at 706.  We overrule Appellant=s second issue.

 

Sufficiency of the Evidence

In
her third and fourth issues, Appellant challenges the legal and factual
sufficiency of the evidence supporting her conviction.  Specifically, Appellant asserts the evidence
is legally insufficient to sustain her conviction as a party to the
offense.  She also asserts the evidence
is factually insufficient to sustain her conviction for the amount of money
alleged in the indictment.

Standard
of Review








Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  Escobedo v. State, 6 S.W.3d 1,
6 (Tex. App.BSan
Antonio 1999, pet. ref=d)
(citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct.
2781, 2786-87, 61 L. Ed. 2d 560 (1979)).  
In reviewing a legal sufficiency challenge, the appellate court examines
the evidence in the light most favorable to the judgment to determine whether a
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993) (citing Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789).  The conviction will be
sustained Aunless it
is found to be irrational or unsupported by more than a >mere
modicum= of the
evidence.@  Moreno v. State, 755 S.W.2d
866, 867 (Tex.  Crim. App. 1988).  The jury is the exclusive judge of (1) the
facts, (2) the credibility of the witnesses, and (3) the weight to be given to
the testimony of each witness.  Barnes
v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury=s domain.  Losada v. State, 721 S.W.2d
305, 309 (Tex. Crim. App. 1986).  A
successful legal sufficiency challenge results in the rendition of an acquittal
by the reviewing court.  See Tibbs
v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d
652 (1982).  

In
conducting a factual sufficiency review, the appellate court must review all of
the evidence, but not in the light most favorable to the prosecution.  Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000).  We must
determine whether a neutral review of all the evidence, both for and against
the challenged finding, demonstrates that a rational juror could find guilt
beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  Evidence is factually insufficient when
evidence supporting the verdict, considered by itself, is too weak to support
the finding of guilty beyond a reasonable doubt.  Id.  Evidence is also factually insufficient when
contrary evidence is so strong that the beyond a reasonable doubt burden of
proof could not have been met.  Id.
at 484-85.  In performing a factual
sufficiency review, we defer to the fact finder=s
determinations, including those involving the credibility and demeanor of
witnesses.  Id. at 481.  The
only question to be answered in a factual sufficiency review is whether,
considering the evidence in a neutral light, the fact finder was rationally
justified in finding guilt beyond a reasonable doubt.  Id. at 484.  

Applicable
Law








A
person commits theft if she unlawfully appropriates property with intent to
deprive the owner of the property.  Tex. Pen. Code Ann. ' 31.03(a) (Vernon Supp. 2005).  An offense under this section is a felony of
the second degree if the value of the property stolen is $100,000 or more but
less than $200,000.  Id.  '
31.03 (e)(6). Appropriation of property is unlawful if it is without the owner=s effective consent.  Id. '
31.03 (b)(1).  AAppropriate@ means to acquire or otherwise exercise
control over property other than real property. 
Id. '
31.01 (4)(B).  ADeprive@ means to withhold property from the
owner permanently or for so extended a period of time that a major portion of
the value or enjoyment is lost to the owners. 
Id. '
31.01 (2)(A). AEffective
consent@ includes
consent by a person legally authorized to act for the owner.  Id. '
31.01(3).  Consent is not effective if
induced by deception or coercion, given by a person who by reason of mental
disease or defect or  of advanced age is
known by the actor to have diminished capacity to make informed and rational
decisions about the reasonable disposition of property.  Id. 

Under
the law of parties, an actor is criminally responsible as a party to an offense
if, acting with intent to promote or assist in the commission of the offense,
she solicits, encourages, directs, aids, or attempts to aid another person in
committing the offense.  See id.
'' 7.01, 7.02.  The evidence is sufficient to support a
conviction under the law of parties where the actor is physically present at
the commission of the offense and encourages the commission of the offense
either by words or other agreement.  See
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).  The evidence must show that, at the time of
the offense, the parties were acting together, each contributing to their
common purpose.  See id.  When determining whether parties were acting
together, the court may examine the events occurring before, during, and after
the commission of the offense and may rely on actions of the defendant that
show an understanding and common design to commit the offense.  See id.  Circumstantial evidence may be used to prove
one is a party to an offense.  See id.

Discussion

During
trial, Appellant said that she met the Turners through Jacks=s association with them.  The Turners joined Jacks and her husband at
Appellant=s house
for Thanksgiving and Christmas for several years.  Appellant sold prearranged funerals to the
Turners and was paid a commission on the sale. 
She conceded receiving several thousands of dollars in checks from the
Turners.  Specifically, Appellant said
that she had borrowed approximately $8,000.00 from the Turners.  She admitted that she had made no effort to
repay any of the money.  Appellant also
admitted that she received an additional several thousand dollars in checks,
but claimed she did not remember the purpose of the checks.  Appellant claimed, however, that in one
instance, Mrs. Turner wanted to cash a check but did not want to go to the
bank.  According to Appellant, Mrs.
Turner changed her mind about driving to the bank; however, she had already
written the $5,000.00 check to Appellant. 
Upon arriving at the bank, Appellant said she cashed the $5,000.00 check
and then handed the money to Mrs. Turner. 
Appellant admitted that she and her husband filed bankruptcy in 1996.








Appellant
received benefit from the travel trailer that the Turners purchased for Jacks
and Jacks=s
family.  She denied receiving any benefit
from the four wheelers, boat, freezer, Ford Explorer, and new furniture purchased
for Jacks.  Appellant conceded that she
had arranged for an attorney to meet with the Turners for the express purpose
of changing their will and that she and Jacks participated in that meeting. 

APS
caseworker Rhonda Brooks testified that Appellant and Jacks had received more
than $127,000.00 in goods and money from the Turners, of which no more than
$16,800.00 could have been legitimate earnings credited to Jacks.  Brooks said that it is common for exploiters
to take advantage of elderly people=s
diminished mental abilities.  Brooks
questioned Appellant at the same time she questioned Jacks, but Appellant was
not named as a suspect in her investigation. 
She testified that the Turners suffered from diminished capacity and
that Jacks knew this and used it to exploit them. 

Attorney
Michael Adams confirmed that Appellant requested that he change the Turners= wills. 
However, after talking to them for thirty to forty-five minutes, he
determined that he was not comfortable with the Turners=
testamentary capacity.  Thus, he did not
proceed with writing new wills for them.

Ramona
Coulter testified that she heard Jacks pressuring Mrs. Turner to sign a check
payable to Appellant, using visits to Mr. Turner at the nursing home as
leverage.  She testified that Appellant
was sitting with Mrs. Turner and Jacks when this exchange took place.  She considered Jacks=s
conversation and tone to be verbally abusive. 
Ramona also heard Jacks say that she was going to get a power of
attorney for the Turners.  

Bank
manager Vickie Felts testified that she was concerned with the money
transactions flowing from the Turners=
accounts to Appellant and Jacks.  Felts
thought it Astrange@ that Appellant and Jacks stayed in her
office while she and Mrs. Turner discussed the Turners=
financial matters. She said that Appellant=s
and Jacks=s actions
especially concerned her considering that Mrs. Turner had changed from being a
meticulous bookkeeper to being Areally
easy going with her money.@   








Jacks
admitted that she received $30,986.82 in Aloans@ from the Turners.  She also admitted that the Turners purchased
and Asigned
over@ a new
Ford Explorer to her.  Jacks acknowledged
that an additional $25,370.00 in checks were written to her.  She admitted that Mrs. Turner paid for a
travel trailer on her behalf and for furniture she had purchased on
credit.  She claimed that the computer
purchased with the Turners=
money was a gift to her from Mrs. Turner. 
Jacks admitted that she and her husband filed bankruptcy in 1994.  She said that she had never seen Ramona
Coulter before her appearance at trial. 

The
court admitted into evidence copies of checks written to Appellant totaling
$18,394.71, to Jacks totaling $63,185.82, and to third parties  for the benefit of Appellant and Jacks
totaling $35,126.36.  

From
this evidence, the jury could have found that the Turners, by reason of
diminished mental capacity, were no longer able to make reasonable property
dispositions; thus, Appellant did not have the Turners=
effective consent to acquire or otherwise exercise control over their
property.  Furthermore, the jury could
have found that Appellant was acting together with Jacks, with each
contributing some part toward the execution of the common purpose of depriving
the Turners of their property.  A
rational trier of fact could have found beyond a reasonable doubt  that Appellant and Jacks unlawfully
appropriated more than $100,000.00 of the Turners=
property with the intent to deprive them of their property.   Examining the evidence in the light most
favorable to the judgment, Appellant=s
legal sufficiency argument fails; consequently, we overrule her third issue.

Appellant
admitted that she accepted money from the Turners, but contended she planned to
repay it.  She testified that some of the
checks without the Aloan@ notation were written to her as
reimbursement for items she had purchased on the Turners=
behalf.  Appellant denied receiving
benefit from the Ford Explorer, boat, four wheelers, freezer, and new
furniture.  Appellant claimed to love the
Turners and hosted them at her home for four years at Thanksgiving and
Christmas.   Appellant said that she
believed that Jacks was taking good care of the Turners.  She denied that she or Jacks ever verbally
abused the Turners.  Although she and her
husband had experienced some difficult times financially, she asserted that
they have always worked.  Appellant did
not believe that the Turners suffered from diminished capacity.  She testified that they were competent and
capable of knowing what they were doing concerning their financial
affairs.  Appellant claimed that she
arranged for the attorney to meet with the Turners to change their will at Mrs.
Turner=s
request. According to APS specialist Rhonda Brooks, her investigation of the
exploitation of the Turners centered on Jacks. 









The
jury accepted the State=s
version of the facts and found against Appellant.  In our evaluation, we should not
substantially intrude upon the jury=s
role as the sole judge of the weight and credibility of witness testimony.  See Santellan v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997). 
We have conducted a neutral review of all the evidence, both for and
against the finding.  The record does not
reveal any evidence that causes us to conclude that the proof of guilt is too
weak to support the finding of guilt beyond a reasonable doubt.  Nor does the record reveal contrary evidence
so strong that guilt cannot be proven beyond a reasonable doubt.  Thus, we hold that the evidence is factually
sufficient to support the jury=s
verdict.  Consequently, we overrule
Appellant=s fourth
issue.

 

Disposition

Having
overruled Appellant=s issues
one, two, three and four, we affirm the judgment of the trial
court.

 

 

  
 SAM GRIFFITH   

  
Justice

 

 

 

Opinion
delivered March 31, 2006.

Panel consisted of Worthen, C.J., Griffith, J., and
DeVasto, J.

 

 

 

 

 

 

 

 

 

 

                                                            (DO
NOT PUBLISH)











[1] We have issued our opinion in the appeal of Appellant=s codefendant, Debbie Sue Jacks.  For a more complete recitation of the
background facts, see Jacks v. State, No. 12-04-00355-CR, 2006 WL
629036 (Tex. App.BTyler Mar. 15, 2006, no pet. h.) (not designated for
publication).  





[2]
R.D. Turner had two sons.  Robert Turner lived in Topeka, Kansas, and
Raymond Turner lived in Atlanta, Georgia. 
After R.D.=s first wife died, he married Jewel Turner when the
boys were youths.  Robert testified that
he considered Jewel to be his mother although Jacks testified that neither
Robert nor Raymond were close to their parents.





[3] Five persons were indicted in Cause Number CR 7365 in
the 1st District Court of San Augustine County. 
Appellant and her daughter Debbie Sue Jacks were prosecuted together in
a single trial, from which the instant appeal arises.  Appellant=s
husband, Donald Melvin Latham, and her son-in-law, Lee Douglas Jacks, were
prosecuted in a single trial following Appellant=s
trial.  Appellant=s other daughter, Betty Holloway, made restitution of
$1,500.00, and the case against her was dismissed.