COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-07-198-CR

 

 

 

KENNETH EDWARD SANDERS                                               APPELLANT

A/K/A KENNETH EDWARDS
SANDERS

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

------------

 

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

------------

 

OPINION

 

------------

I.  Introduction








A jury found Appellant
Kenneth Edward Sanders guilty of three counts of aggravated sexual assault of a
child and assessed his punishment at thirty years= confinement on each charge. 
The trial court sentenced Sanders consistent with the jury=s findings and ordered the three sentences to run consecutively.  In three points, Sanders contends that the
trial court erred by (1) admitting evidence of an extraneous offense, (2)
denying his request for a limiting instruction, and (3) overruling his objection
to the jury charge on punishment.  We
will affirm.

II.  Factual and Procedural Background

In 1998, Sanders married
D.S.  At that time, D.S. had three young
childrenCtwo girls and a boy.  One of
those children, D.G., is the complainant in this case and was ten years old
when Sanders and her mother married. 
D.G. testified that Sanders forced her into a sexual relationship with
him beginning when she was eleven years old and continuing for several
years.        

During the course of this
relationship, D.G. said that Sanders would force her to engage either in sexual
or oral intercourse with him every day or every other day.  Additionally, when D.G. had sleepovers with
her girlfriends, Sanders forced her to submit to and perform oral and sexual
intercourse with him in front of her friends. 
D.G.=s
girlfriends were all about D.G.=s ageCranging from
eleven to thirteen years old.  D.G. also
testified that, on one occasion, Sanders bought drugs and, in lieu of money
payment, allowed the drug dealer to force D.G. to have both sexual and oral
intercourse with him.  








The State additionally
presented the testimony of two of D.G.=s girlfriends, who corroborated D.G.=s testimony regarding the forced intercourse with Sanders during the
sleepovers.  In his defense, Sanders
denied all of D.G.=s
allegations and claimed that D.G. was fabricating the story in retaliation for
Sanders=s moving her and her family to a different Fort Worth suburb in late
2000.  

After hearing the testimony
of these and other witnesses, the jury found Sanders guilty of three counts of
aggravated sexual assault of a child and assessed his punishment at thirty
years= incarceration on each count. 
Sanders now appeals.

III.  Admission of Extraneous Offense Evidence

In his first point, Sanders
complains that the trial court erred by allowing D.G.=s testimony that Sanders Agave@ D.G. to his
drug dealer and allowed the dealer to sexually abuse D.G. in lieu of money
payment for the drugs.  Such testimony,
Sanders contends, was irrelevant, and, assuming that it was relevant, was
extremely prejudicial and of little probative value.  We address each argument in turn.  

A.     Standard of Review for Relevance Determinations








Rule 404(b) embodies the established principle that a
defendant is not to be tried for collateral crimes or for being a criminal
generally.  Tex. R. Evid. 404(b); Nobles v. State, 843 S.W.2d 503,
514 (Tex. Crim. App. 1992); Russell v. State, 113 S.W.3d 530, 535 (Tex.
App.CFort Worth 2003,
pet. ref=d); Booker v.
State, 103 S.W.3d 521, 530 (Tex. App.CFort Worth 2003,
pet. ref=d) (op. on reh=g). Consequently,
evidence of extraneous offenses is not admissible at the guilt-innocence phase
of trial to prove that a defendant acted in conformity with his character by
committing the charged offense.  Tex. R. Evid. 404(b); Russell,
113 S.W.3d at 535; Booker, 103 S.W.3d at 529.  








However, the Texas Legislature has determined that,
notwithstanding rule 404, evidence of other crimes,
wrongs, or acts committed by the defendant against a child under seventeen
years old who is the victim of the alleged offense shall be admitted for its
bearing on relevant matters, such as the state of mind of the defendant and the
child and the relationship of the defendant and the child before and after the
offense.  Tex. Code Crim. Proc. Ann. art. 38.37, ' 2 (Vernon Supp. 2007); Dixon v. State, 201 S.W.3d 731, 734B35 (Tex. Crim. App. 2006). 
Courts of appeals have therefore recognized that article 38.37, section
2 supersedes application of rule 402 and makes otherwise irrelevant evidence
relevant.  Jones v. State, 119
S.W.3d 412, 420 (Tex. App.CFort Worth 2003, no pet.); Hitt v. State, 53 S.W.3d 697, 704B05 (Tex. App.CAustin 2001,
pet. ref=d); Walker v. State, 4 S.W.3d 98, 102B03 (Tex. App.CWaco 1999,
pet. ref=d); Allred v. State, No. 11-04-00026-CR, 2006 WL 1029083, at *2
(Tex. App.CEastland
Sept. 13, 2006, pet. ref=d) (not
designated for publication).  Even so, the State, as the
proponent of extraneous offense evidence, nevertheless bears the burden of showing admissibility of the evidence under article 38.37.  See Rankin v. State, 974 S.W.2d 707,
718 (Tex. Crim. App. 1998) (op. on reh=g).

Rulings on relevance should
be left largely to the trial court, relying on its own observations and experience,
and will not be reversed absent an abuse of discretion.  Salazar v. State, 38 S.W.3d 141,
153 (Tex. Crim. App. 2001); Moreno v. State,
858 S.W.2d 453, 463 (Tex. Crim. App.), cert. denied, 510 U.S. 966
(1993).  If the trial court=s ruling was
within the Azone of reasonable disagreement,@ then there is no
abuse of discretion, and the appellate court must uphold the trial court=s ruling.  Moreno, 858 S.W.2d at 463; Jones,
119 S.W.3d at 419.  

B.      Relevance of
D.G.=s Testimony








During D.G.=s testimony, the State asked D.G. whether she knew an individual by
the name of Ricky Sanders[1]
and if anything unusual had happened with him. 
At that point, Sanders objected that the testimony the State was seeking
to elicit was irrelevant.  The trial
court overruled the objection, at which point Sanders argued that the testimony
was related to an extraneous offense and asked for a limiting instruction.  The trial court, not knowing what D.G. was
going to say, excused the jury and conducted a brief hearing on the matter.

During the hearing, the State
explained what D.G.=s testimony
would be and argued that it was admissible under article 38.37, section 2 of
the code of criminal procedure.  Sanders
responded that the prejudicial effect outweighed any probative value of the
testimony.  The trial court reviewed
article 38.37 and determined that D.G.=s testimony about Ricky was admissible under section two of that
article.  The trial court then called the
jury back in and gave the jury the following admonishment: AI am instructing you at this point that the following testimony is
being admitted only for the purpose of showing the previous and subsequent
relationship between the defendant and the child, if it does, and not for the
purpose of showing a crime, if it does.@  In its charge at the
guilt-innocence stage, the trial court likewise instructed the jury as follows:

You are instructed that if there is any testimony
before you in this case regarding the Defendant=s
having allegedly committed offenses[,] wrongs[,] or acts other than the offense
alleged against him in the indictment in this case, you cannot consider said testimony
for any purpose unless you find and believe beyond a reasonable doubt that the
defendant committed such offenses, if any were committed, and even then you may
only consider the same in determining the motive, opportunity, intent,
knowledge, [or] identity[] for this defendant now on trial before you, or to
show the previous and subsequent relationship between the defendant and the
child, if it does, and for no other purpose. 








D.G. then testified that
Sanders=s cousin, Ricky, was a drug dealer and that Ricky sold methamphetamine
to Sanders.  On one occasion, Sanders
either did not have the money to pay for the drugs or simply did not want to
pay for the drugs.  That afternoon,
Sanders approached D.G. and told her that she would be spending the rest of the
afternoon with Ricky.  D.G. did not
suspect anything, but Ricky took her back to his apartment and forced D.G. to
engage in both oral and sexual intercourse with him.  D.G. later learned that sex with her was
Sanders=s form of payment to Ricky for the methamphetamine.

On appeal, Sanders contends
that because he was indicted for specific acts of sexual abuse against D.G.,
the incident with Ricky to settle a drug debt was completely irrelevant, as it
did not tend to make any fact of consequence more or less probable than it
would be without the evidence.  The State
argues, as it did at the trial level, that the testimony is relevant under
article 38.37, section 2 of the code of criminal procedure as showing Sanders=s and D.G.=s states of
mind and their previous and subsequent relationship.   








D.G.=s testimony concerning the events with Ricky was relevant in this case
to demonstrate the unnatural attitude and relationship Sanders had developed
toward D.G.  See Jones, 119 S.W.3d
at 420 (holding that evidence of the defendant=s actions involving the child victim and third party children was
relevant to show the defendant=s state of mind and relationship with the complainant); Ernst v.
State, 971 S.W.2d 698, 700 (Tex. App.CAustin 1998, no pet.); Comeaux v. State, Nos. 14-03-01223-CR,
14-03-01224-CR, 14-03-01225-CR, 2005 WL 1149795, at *5 (Tex. App.CHouston [14th Dist.] May 17, 2005, pet. ref=d) (not designated for publication) (holding evidence that the
defendant solicited a third party to have sex with the child victim was
relevant to show the defendant=s state of mind and his relationship with the victim).  The testimony revealed Sanders=s state of mind and relationship with D.G. by demonstrating that
Sanders saw sex with D.G. as a tradable good that he took lightly.  Sanders=s allowing an adult male to sexually abuse D.G. thus demonstrated his
own state of mind and relationship with D.G. 
Moreover, the trial court specifically instructed the jury not to
consider the evidence for any purpose other than showing the states of mind and
relationship between D.G. and Sanders.  See
Jones, 119 S.W.3d at 420.

Therefore, considering
article 38.37 and the evidence admitted at trial, we cannot say with confidence
that the evidence of what happened with Ricky did not make it more probable
that Sanders in fact had sexual relations with D.G. himself.  See Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990) (op. on reh=g).  Thus we hold that D.G.=s testimony concerning the events with Ricky was relevant.  See Moreno, 858 S.W.2d at 463.

 








C.      Standard of Review for Rule 403
Determination

Evidence that is relevant under article 38.37 is
nevertheless subject to exclusion if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues,
misleading the jury, or needless presentation of cumulative evidence.  Tex.
R. Evid. 403; Hitt, 53 S.W.3d at 706; Poole v. State, 974
S.W.2d 892, 897 (Tex. App.CAustin 1998, pet.
ref=d).  Only Aunfair@ prejudice
provides the basis for exclusion of relevant evidence.  Montgomery, 810 S.W.2d at 389.  Unfair prejudice arises from evidence that
has an undue tendency to suggest that a decision be made on an improper basis,
commonly an emotional one.  Id.  

When a defendant makes a rule 403 objection, the trial
court has a nondiscretionary obligation to weigh the probative value of the
evidence against the unfair prejudice of its admission.  Id. 
In overruling such an objection, the trial court is assumed to have
applied a rule 403 balancing test and determined the evidence was
admissible.  See Poole, 974 S.W.2d
at 897; Yates v. State, 941 S.W.2d 357, 367 (Tex. App.CWaco 1997, pet.
ref=d); Caballero
v. State, 919 S.W.2d 919, 922 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d). 
Rule 403 does not require that the trial court perform the balancing
test on the record.  Poole, 974
S.W.2d at 897; Yates, 941 S.W.2d at 367.








The trial court is given wide latitude to admit or exclude
evidence of extraneous offenses.  See
Montgomery, 810 S.W.2d at 390; Poole, 974 S.W.2d at 897.  A reviewing court must therefore recognize
that the trial court is in a superior position to gauge the impact of the
relevant evidence and not reverse a trial court=s ruling if it is
within the Azone of reasonable disagreement.@  Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999); Montgomery, 810 S.W.2d at 391.  In balancing probative value and unfair
prejudice under rule 403, an appellate court presumes that the probative value
will outweigh any prejudicial effect.  Montgomery,
810 S.W.2d at 389.  It is therefore the
objecting party=s burden to demonstrate that the probative
value is substantially outweighed by the danger of unfair prejudice.  Hinojosa v. State, 995 S.W.2d 955, 958
(Tex. App.CHouston [14th Dist.] 1999, no pet.); Poole,
974 S.W.2d at 897.








An appellate court must measure the trial court=s balancing
determination against the relevant criteria by which a rule 403 decision is
made.  Mozon, 991 S.W.2d at
847.  The relevant criteria in
determining whether the prejudice of an extraneous offense substantially outweighs
its probative value include  (1) how
compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probableCa factor which is
related to the strength of the evidence presented by the proponent to show the
defendant in fact committed the extraneous offense; (2) the potential the other
offense evidence has to impress the jury Ain some irrational
but nevertheless indelible way@; (3) the time the
proponent will need to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense; and (4) the force of the
proponent=s need for this evidence to prove a fact
of consequence, that is, does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.  Id. (citing Montgomery,
810 S.W.2d at 389B90). 


When the relevant criteria are viewed objectively and lead
to the conclusion that the danger of unfair prejudice substantially outweighs
the probative value of the proffered evidence, the appellate court should
declare that the trial court erred by failing to exclude it.  Curtis v. State, 89 S.W.3d 163, 170
(Tex. App.CFort Worth 2002, pet. ref=d) (citing Montgomery,
810 S.W.2d at 392).

D.     Rule 403 and D.G.=s Testimony








Sanders argues that the
prejudicial effect of D.G.=s extraneous offense testimony involving Ricky far outweighed its
probative value and that the trial court therefore erred by overruling his
objection to it.[2]  Applying the rule 403 balancing factors, we
first examine how compellingly the extraneous act involving D.G. and Ricky
shows Sanders=s guilt in
committing the charged offenses.  See
Mozon, 991 S.W.2d at 847.  Here, the
indictment charges Sanders with, on various occasions, intentionally or
knowingly causing the penetration of D.G.=s female sexual organ by inserting his finger, tongue, and male sexual
organ into her female sexual organ and of causing the penetration of D.G.=s mouth with his male sexual organ. 
Evidence that Sanders was willing to allow Ricky to sexually assault
D.G. in the same manner in which Sanders was charged makes it more likelyCbut probably not compellingly likelyCthat he himself did the same thing to D.G.








Next, under the second and
third factors, we examine the potential of the evidence to impress the jury in
some irrational but nevertheless indelible way and the amount of time the State
used in developing the evidence.  See
id.  D.G.=s testimony about what Ricky did to her and Sanders=s involvement may have inflamed the jury, but the incident with Ricky,
although heinous, paled in comparison to D.G.=s graphic testimony about Sanders=s repeated sexual assaults of her beginning when she was eleven years
old and continuing for several years. 
D.G.=s graphic
testimony concerning Sanders=s conduct overshadowed, by far, any inflammatory response the jury may
have had to D.G.=s testimony
concerning the events with Ricky. 
Furthermore, D.G.=s
description of the incident with Ricky consisted of little more than one page
in almost two hundred pages of testimony. 
Additionally, D.G.=s brief
testimony about the incident with Ricky was followed by a specific limiting
instruction from the trial court (which was almost as long as D.G.=s testimony about the incident) directing the jury to consider the
evidence only inasmuch as it demonstrated the relationship between D.G. and
Sanders.  Consequently, here the
extraneous act involving Ricky was not likely to create such prejudice in the
minds of the jurors that they would be unable to consider the evidence for its
proper purpose.  See id.








Looking to the fourth factor,
we determine the force of the State=s need for D.G.=s testimony
about the incident with Ricky.  See
id.  The State possessed evidence and
testimony concerning Sanders=s direct acts against D.G.  The
State=s need for the testimony was thus only slight.  Beginning with the presumption that D.G.=s testimony about the incident with Ricky was more probative than
prejudicial and evaluating it under the rule 403 factors, however, we cannot
say that Sanders was unfairly prejudiced by D.G.=s testimony.  See id.; Montgomery,
810 S.W.2d at 389.  We therefore hold
that the trial court did not abuse its discretion by allowing D.G.=s testimony concerning the incident with Ricky.  Mozon, 991 S.W.2d at 847.

E.     No Harm from Admitting D.G.=s Testimony

Alternatively, even if D.G.=s testimony about the incident with Ricky was more prejudicial than
probative, her testimony on this point was nevertheless harmless.  See Cockrell v. State, 933 S.W.2d 73,
90 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1173 (1997)
(conducting a harm analysis after determining that the trial court did not
commit error).








In making this determination,
we evaluate the admission of the extraneous offense evidence in the context of
the entire record.  See Motilla v.
State, 78 S.W.3d 352, 355B56 (Tex. Crim. App. 2002). 
Here, the record reveals that the State spent very little time on the
Ricky incident.  D.G.=s actual testimony on the issue took up a little over a page of the
almost two-hundred-page record. 
Furthermore, the State did not mention the incident at all in its
opening statement and mentioned it only briefly in closing arguments, saying, AYou may use as instructed in the Court=s Charge, all the testimony, cousin Ricky, all the other part -- well,
actually what I=m talking
about is the stuff in Parker County.  You
can use -- utilize that testimony in your evaluation, if you believe beyond a
reasonable doubt that that occurred.@  The State went on to focus
solely on the testimony about the sexual acts that Sanders forced D.G. to
perform in front of and with her girlfriends. 
The State did not present any other witnesses who testified about the
incident.  

Considering the brief
presentation of evidence about what Ricky did to D.G. and Sanders=s involvement in the context of the entire record, we cannot say that
the testimony substantially swayed or influenced the jury=s verdict.  See King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)) (establishing that
there is no harm upon the admission of evidence unless the admission had a
substantial and injurious influence in determining the jury=s verdict).  Thus, even if the
evidence of Sanders=s trading
sex with D.G. for drugs was more prejudicial than probative, it nevertheless
would have been harmless error. 
Accordingly, we overrule Sanders=s first point.

IV.
Limiting Instruction

Sanders=s second point is that the trial court erred by denying his request
for a contemporaneous limiting instruction in connection with the admission of
a different extraneous offense.  

A.     When a Trial Court Must Give a Limiting Instruction

Under Texas Rule of Evidence
105(a),








When
evidence which is admissible as to one party or for one purpose but not
admissible as to another party or for another purpose is admitted, the court,
upon request, shall restrict the evidence to its proper scope and instruct the
jury accordingly; but, in the absence of such request [,] the court=s
action in admitting such evidence without limitation shall not be a ground for
complaint on appeal.

 

Tex. R. Evid. 105(a).

 

The first opportunity to
request a limiting instruction is when the testimony is initially
admitted.  See Hammock v. State,
46 S.W.3d 889, 895 (Tex. Crim. App. 2001). 
A limiting instruction on testimony about an extraneous offense, if
requested, should be given when the evidence is admitted and then again in the
final jury charge.  Delgado v. State,
235 S.W.3d 244, 251 (Tex. Crim. App. 2007); Hammock, 46 S.W.3d at
895.  Giving the limiting instruction in
the jury charge alone is insufficient because it is impossible for jurors to go
back at the close of the trial and reassess the evidence in light of the
limiting instruction, even if they could appreciate which items of evidence the
instruction was supposed to apply to.  Hammock,
46 S.W.3d at 895.  This may result in the
jury drawing inferences about the defendant=s guilt based upon character conformity, a use of the evidence that
was not contemplated by the trial court. 
Delgado, 235 S.W.3d at 251. 
The danger then becomes that the improper inference drawn cannot later
be erased by an instruction in the charge. 
Id.  

 








B.     Necessity of a Limiting Instruction for D.G.=s Testimony

In this case, the State
sought to elicit testimony from D.G. about incidents that happened when two of
her best friends, M.E. and A.S., both of whom were approximately D.G.=s age, spent the night at D.G.=s house.  The State established
that these incidents occurred in Parker County.[3]  The following exchange then occurred:

Q.     Did they [M.E. and A.S.] sometimes spend
the night?

 

A.     Yes.

 

Q.     During this time was there something
significant that started occurring?

 

A.     When they started to stay the night
[Sanders] would stay home more when my mom went out.  He started to buy wine coolers again.

 

[SANDERS=S
ATTORNEY]:     Your Honor, at this time we
would object to this testimony, 401, 403 and 404, it=s
outside the jurisdiction of anything -- 

 

At that point, the trial court noted the hour and
took a recess for lunch, saying that it would rule after the lunch break.  Before bringing the jury back in for the
afternoon session, the following exchange took place:








THE
COURT:       Okay.  I think the last thing that happened actually
was the objection by [Sanders=s attorney].

 

[STATE=S
ATTORNEY]: The objection was to offenses
alleged in Parker County, not in Tarrant County.  He objected to those that the court didn=t
have jurisdiction on those, I believe that=s right.  Is that right, [Sanders=s
attorney]? 

 

Sanders=s attorney did not answer but engaged in a debate as to whether the
State should respond in front of the jury. 
The State ultimately responded to Sanders=s objection by saying, AUnder 404(b) and 38.37 the [S]tate submits it=s admissible.@  The trial court overruled Sanders=s objection.  

D.G. then testified that,
after the family had moved from Tarrant County to Parker County, Sanders
continued to sexually assault her in a variety of ways.  Sanders Arenew[ed] the objection@ and sought a continuing objection to the testimony.  D.G. then testified that one night, she had a
sleepover at her house and invited M.E. and A.S. to stay the night.  She said that Sanders provided wine coolers
and marijuana to the twelve- and thirteen-year-old girls.  Then, Sanders=s attorney objected,

[SANDERS=S
ATTORNEY]:     Your Honor, we would again
object at this point under 401, 403, and 404 for the reasons previously
stated.  We would ask for a limiting
instruction at this point.

 

THE
COURT:       Okay.  I=ll overrule the objection.

 

[SANDERS=S
ATTORNEY]:     Request for a limiting
instruction, you=re
overruling that as well?

 








THE
COURT:       I=ll
deny the request for a limiting instruction.

 

[SANDERS=S
ATTORNEY]:     So I don=t
have to object to each question, may I have a continuing objection to both of
those and continuing request?

 

THE
COURT:       Okay. 

 

D.G. then went on to testify
that, during the sleepover, Sanders sexually assaulted her in front of M.E. and
A.S. and had M.E. and A.S. also sexually assault her and each other.  M.E. testified after D.G. and corroborated
exactly what D.G. had said.  Sanders
never objected to M.E.=s testimony.








We need not decide whether
the trial court erred by not giving the limiting instruction requested by
Sanders.  Sanders=s running objection and request for a limiting instruction applied
only to D.G.=s
testimony.  See Fuentes v. State,
991 S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528 U.S.1026
(1999); Scaggs v. State, 18 S.W.3d 277, 292 (Tex. App.CAustin 2000, pet. ref=d) (noting that a running objection when requested by defense counsel
and granted by the trial court does not preserve error when another witness
testifies to the same matter without objection).  But when the same evidence was later
introduced through the matching testimony of M.E., Sanders did not object or
request a limiting instruction.[4]  Consequently, the issue raised by SandersCthat the trial court erred by admitting and failing to give a limiting
instruction concerning D.G.=s testimony about the group sex with A.S. and M.E.Cis moot.  See Chamberlain v.
State, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999), cert. denied, 528
U.S. 1082 (2000) (commenting that it is well established that questions
regarding the admission of evidence are rendered moot if the same evidence is
elsewhere introduced without objection). 


In other words, even if the trial
court had erred by admitting D.G.=s testimony without a limiting instruction based on Sanders=s 401, 403, and 404 objection, such an error was made harmless by M.E.=s testimony, which was offered for all purposes, without
objection.  See id.; Matz v.
State, 21 S.W.3d 911, 912 (Tex. App.CFort Worth 2000, pet. ref=d) (holding that even if the trial court had erred by improperly
admitting evidence, such error was harmless when the evidence was later
introduced without objection); Brown v. State, 6 S.W.3d 571, 580 (Tex.
App.CTyler 1999, pet. ref=d) (stating that A[e]ven when inadmissible evidence is erroneously admitted, the error
is cured when the same evidence is admitted without objection elsewhere at
trial@).  Accordingly, we overrule
Sanders=s second point.[5]








V.  Issuance of Statutorily Mandated Jury Charge

In his third point, Sanders
complains, as he did at trial, that the court=s charge to the jury concerning the possibility of good conduct time
denied him due process because the charge contained an incorrect statement of
the law. 

In crafting its charge to the
jury at the punishment phase of trial, a trial court is bound to comply with
the mandatory language of article 37.07, section 4 of the code of criminal
procedure.  Tex. Code Crim. Proc. Ann. art. 37.07, ' 4 (Vernon Supp. 2007).  This article requires that in the trial court=s instruction to the jury during the punishment phase, the trial court
must inform the jury of the existence and mechanics of parole law and good
conduct time.  Id.

A person convicted of certain
enumerated offenses, however, is not eligible for release on mandatory
supervision, regardless of how much good time he might accrue; his good conduct
time does not make him eligible for parole any sooner than he would be without the
good conduct time credits.  See Tex. Gov=t Code Ann. ' 508.149(a) (Vernon Supp. 2007); Tex.
Penal Code Ann. '
22.021(a)(1)(B), (e) (Vernon Supp. 2007); Luquis v. State, 72 S.W.3d
355, 362 (Tex. Crim. App. 2002).  








Thus, in a case where the
jury has found the defendant guilty of one of the offenses set forth in
government code section 508.149(a), the portion of the statutorily mandated
jury charge discussing good conduct time only marginally applies to that
defendant.  See Luquis, 72 S.W.3d
at 362.  This has led some defendants to
argue that the jury instruction on good conduct time is a misstatement of the
law as it applies to them and is therefore a violation of due process
rights.  See id. at 366 n.29.

In 2002, the court of
criminal appeals took up the issue of whether article 37.07, section 4(a) of
the code of criminal procedure was unconstitutional under the due course of law
provisions of the Texas and United States Constitutions in that it required
instructions on good conduct time that could mislead the jury in a case in
which good conduct time did not affect parole eligibility or release date.  Id. at 358.  After a detailed examination of the
legislative history of the statute and impact of the instruction on the
defendant, the court of criminal appeals determined that the statute did not
violate either constitutional provision. 
Id. at 365.  We note that
this court has similarly concluded that article 37.07, section 4(a) does not
violate either due process provision.  See
Cagle v. State, 23 S.W.3d 590, 594 (Tex. App.CFort Worth 2000, pet. ref=d).








In this case, Sanders was
convicted of aggravated sexual assault of a child.  This is one of the offenses included in the
statute prohibiting release on mandatory supervision.  See Tex.
Gov=t Code Ann. ' 508.149(a)(8).  Therefore, good
conduct time has little impact on when Sanders will be eligible for
parole.  See Luquis, 72 S.W.3d at
362.  Nevertheless, the trial court
included in its jury charge the mandatory language of article 37.07, section
4(a) in its totality, including the instruction on good conduct time.  See Tex.
Code Crim. Proc. Ann. art. 37.07, ' 4. 

As discussed above, the court
of criminal appeals has evaluated the very argument that Sanders presents and
has determined that a jury charge like the one here does not violate a
defendant=s due
process rights.  See Luquis, 72
S.W.3d at 365.  This court has similarly
handed down a case that is directly on point and determined that a jury charge
like the one here does not violate a defendant=s due process rights.  See
Cagle, 23 S.W.3d at 594.  Sanders
himself admits in his brief to this court that Athe Court of Criminal Appeals has directly addressed [the] issue
raised herein and found no violation of due process in the jury charge
authorized by statute.@  Accordingly, we overrule Sanders=s third point.

VI.  Conclusion

Having overruled all three of
Sanders=s points, we affirm the trial court=s judgment.

 

SUE
WALKER

JUSTICE    








 

PANEL F:    CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

PUBLISH

 

DELIVERED: May 8, 2008











[1]Ricky
Sanders is the cousin of Appellant Kenneth Edward Sanders and, to avoid
confusion, will be referred to as ARicky@
hereinafter.





[2]Because
Sanders objected on specific grounds and the trial court overruled his
objection, we assume that the trial court applied rule 403 and determined that
the probative value of the evidence was not substantially outweighed by any
degree of unfair prejudice.  See Poole,
974 S.W.2d at 897; Yates, 941 S.W.2d at 367.





[3]In
2000, the family moved from Tarrant County to Parker County. Sanders was indicted
only for incidents that occurred in Tarrant County, before the move to Parker
County. 





[4]We
note that Sanders=s
objections and parallel request for a limiting instruction were made under
rules 401, 403, and 404 of the rules of evidence which would apply equally to
M.E.=s
testimony.





[5]The
State argues that the evidence in this case was same transaction contextual
evidence and that, therefore, no limiting instruction was required.  We need not address this argument, however,
in light of our holding that Sanders did not preserve his complaint concerning
the denial of a rule 401, 403, or 404 limiting instruction concerning D.G.=s
testimony because M.E.=s
identical testimony was admitted for all purposes without objection.