

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00449-CR

**TODD WILLIAM BAKER,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

**From the 18th District Court
Johnson County, Texas
Trial Court No. F44526**

## MEMORANDUM  OPINION

Appellant, Todd William Baker, appeals from his convictions for one count of attempted sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.011(a)(2), (f) (West 2011), and two counts of sexual performance by a child, all second-degree felonies. *See id.* § 43.25(b)-(c) (West 2011). In four issues, Baker asserts that: (1) the record does not contain sufficient evidence to establish venue with regard to the two counts of sexual performance by a child; (2) the evidence supporting his convictions for attempted sexual assault of a child and sexual performance of a child is insufficient; and (3) the

trial court erred by allowing the State to introduce extraneous-offense evidence. We affirm.

## I. BACKGROUND

The family history of the complainant in this case, Mercedes Camp, is quite complex. Mercedes was born on June 14, 1991 to Heidi Camp and Lance Dickenson. Heidi and Lance had a second child, Stacy, on September 4, 1992. However, as a result of an investigation conducted by Child Protective Services, Mercedes and Stacy were removed from Heidi and Lance's home in 1994 and placed with Heidi's mother, Cherry Camp. Mercedes and Stacy remained in Cherry's custody until 1997, when Heidi and Lance divorced. At this time, Cherry formally adopted Mercedes and Stacy, ostensibly making Mercedes and Stacy sisters with Heidi, their biological mother.

Shortly after divorcing Lance, Heidi began dating Baker. Thereafter, Heidi became pregnant with Baker's child. The couple eventually married and had two children of their own. Shortly after her fourteenth birthday, Mercedes moved out of Cherry's house and began living with Heidi and Baker in their house on Michael Street in Johnson County, Texas.

On or about August 15, 2005, Mercedes recalled an incident involving Baker and herself.[1] According to Mercedes, on the day in question, she was:

> picking up a puzzle because my sister had left it out and stuff like that, and I was picking it up and he [Baker] came in here and he pushed me

---

[1] At trial, Mercedes stated that Baker was in charge of the house; that he made the rules in the house; and that she regarded him as her father. She also testified that Baker provided her and Stacy with alcohol and cigarettes when Heidi left the girls to his supervision. On the other hand, Heidi emphasized that Baker and Mercedes were not blood-related and that, legally, Baker was Mercedes's brother-in-law.

down on the bed and he got on top of me and he pulled his penis out and was trying to have sex with me.

While this was allegedly transpiring, Heidi was taking a long shower. Mercedes recounted that Baker's penis was erect at this time and that she "froze up and didn't know what to do."[2] She later clarified that after Baker pushed her on the bed and got on top of her, he pulled down her pants and panties. However, before Baker could penetrate her, Heidi came into the bedroom, causing Baker to "freak out" and run after Heidi. Heidi testified at trial that she did not recall anything inappropriate transpiring on the day in question.[3] She stated that Baker was lying on the bed and that Mercedes was sitting by Baker and was tickling him. In any event, Mercedes testified that Heidi started yelling at Baker and he walked away. Meanwhile, Mercedes was sitting on the bed crying, and Heidi allegedly hit Mercedes on the back of the head and called her a "slut." In response to the incident, Heidi neither called the police, nor kicked Baker out of the house.

---

[2] Mercedes also testified that she was often left alone with Baker while Heidi went to work and that:

He would come and he would always want me to come and sit in his lap and he'd always tell me like if I didn't do what he wanted that he was going to tell my mom that I came on to him and that she would hate me and that she would kick me out and that I'd never get to see my brother and sisters.

Mercedes later clarified that what Baker wanted to do was have sex with her.

[3] On cross-examination, Heidi admitted that Baker told her that he had consensual sex with Mercedes one time when Mercedes was seventeen years old. However, Shannon Kimberling, a detective with the Burleson Police Department, testified that Baker told her that Mercedes would always come on to him by grabbing his "pecker" and "kissing on [his] neck when I was doing the dishes in the kitchen" and that he and Mercedes had consensual sex on two occasions.

Nevertheless, for the next six months, Heidi did not leave Mercedes unattended with Baker and instead took Mercedes everywhere she went. But, for some reason, six months after the incident, Heidi began leaving Mercedes unattended with Baker, and Mercedes remembered that at this time she began having sex with Baker. Mercedes noted that she has had sex with Baker more than a hundred times in Johnson County and that she did not feel like she had a choice to decline Baker's advances.

The State then elicited testimony from Mercedes about September 4, 2009—the first time she disclosed what happened between her and Baker. On September 4, 2009, Mercedes called Chelsea Garner, the daughter of Cindy Coggins, to pick her up from Burleson High School. Cindy is Baker's step-brother's wife. Garner agreed to pick Mercedes up from school and take her to the Coggins' house. Garner, Cindy, and Mercedes got to talking, and Mercedes eventually told them everything that had happened between Baker and her. Cindy agreed to help Mercedes and offered to let her stay at the house.[4] Later that evening, Baker repeatedly called Cindy, asking for permission to come over and talk to Mercedes. Cindy, Mercedes, and Barry Coggins, Baker's step-brother, testified that Baker expressed that he romantically loved Mercedes and that he wanted to run away with her to Tennessee.[5] On September 13, 2009, Mercedes reported the incidents to the Burleson Police Department.

---

[4] On rebuttal, Cindy testified that Heidi told her that she knew that Baker was molesting Mercedes and that "she would go to jail."

[5] Barry spoke to Baker and recalled Baker stating that he had messed up Mercedes's life; that Mercedes was like a daughter to him; and that he loved her romantically.

Mercedes further testified that Baker sexually assaulted her on a regular basis, including when the family relocated to Florida in the latter part of 2008; when the family moved to a Howard Johnson motel in Tarrant County, Texas, in January 2009; and when the family moved back to Johnson County after spending three months in the Howard Johnson motel.

However, Mercedes acknowledged on cross examination that she did not tell an interviewer at the Children's Assessment Center about the sexual assaults that allegedly transpired six months after the first incident on the bed while Heidi was in the shower. Mercedes told the interviewer that nothing else happened until she and Baker had sex again when she was seventeen years old. When asked about the apparent discrepancy between her trial testimony and the statements provided at the Children's Assessment Center, Mercedes said that she did not provide all of the details to the interviewer because she "didn't want to talk about it." Nevertheless, she testified that, after she turned seventeen, she and Baker had sex about forty different times.

Stacy, Mercedes's sister, testified, over Baker's Rule 403 and 404(b) objections, that she saw Baker act inappropriately towards Mercedes. *See* TEX. R. EVID. 403, 404(b). Specifically, Stacy stated that:

> He [Baker] would go up behind [Mercedes], put his arms around her and kiss her on the cheek or something. And then he would spank her randomly. When he sat next to her on the couch[,] he would put his hand on her leg, enough for her to be uncomfortable. If she got up, he would be upset for it and yell at her. He would pinch her on the butt a lot. Stuff like that.

Stacy also recalled Baker calling Mercedes "a cunt, a slut, a whore, [and] a bitch." She also recalled Baker staring at Mercedes's "butt" and calling her sexy. Later, Stacy testified that Baker acted inappropriately towards her as well. In particular, Stacy noted that when she was thirteen or fourteen years old:

> He [Baker] would catch me on the stairs and grab me and start kissing my neck. I would pull away and he would get upset. I was laying [sic] on the end of his bed one time and he was twining his hands through my legs. And he also got upset when I pulled away from there. He would make comments to me.
>
> . . . .
>
> Yeah, because he started rubbing and it started going up close to like my butt and stuff and I got uncomfortable with it. And then when I left he told me, [f]ine, I won't love on you.

Stacy also testified that Baker had spanked her when she was around sixteen years old and told her that she "was almost hot enough for him to date." And finally, Stacy noted that Baker told Mercedes and her that "he loved us more than he should have" and that he would leave Heidi in a heartbeat to be with either of the girls.

Garner also testified at trial and noted that she babysat Heidi and Baker's two young children frequently. Garner remembered Heidi telling her that one of the young children—a three-year-old female—asked Heidi if she was "going to have to kiss Daddy like Sissy does." Like Barry and Cindy, Garner received messages from Baker stating that he "was in love with [Mercedes], that he wanted to take the two younger children and go with her, not sure where."

Baker was arrested and charged by indictment with one count of attempted sexual assault of a child allegedly transpiring on or about August 15, 2005, and two

counts of sexual performance of a child alleged to have occurred on or about February 14, 2009 and March 19, 2009. At the conclusion of the trial, the jury found Baker guilty of the charged offenses and sentenced him to twenty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine in each count. The sentences were ordered to run concurrently. On December 5, 2011, Baker filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II. VENUE AS TO COUNTS TWO AND THREE OF THE INDICTMENT

In his first issue, Baker contends that the record does not contain legally and factually sufficient evidence to prove appropriate venue in Johnson County regarding the two counts of sexual performance by a child.[6] We disagree.

### A. Applicable Law

As this Court has previously stated, "[v]enue is not an element of the offense." *Witt v. State*, 237 S.W.3d 394, 399 (Tex. App.—Waco 2007, pet. ref'd) (citing *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981); *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd); *Henley v. State*, 98 S.W.3d 732, 734 (Tex. App.—Waco 2003, pet. ref'd)). Accordingly, venue need be proved by only a preponderance of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2005);

---

[6] In three of his issues on appeal, Baker challenges both the legal and factual sufficiency of the evidence supporting his conviction. We note that the Texas Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases, instructing that we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). As such, we analyze all of Baker's sufficiency claims under the *Jackson v. Virginia* legal-sufficiency standard of review. *See Brooks*, 323 S.W.3d at 902 (concluding that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable").

*Murphy v. State*, 592, 604 (Tex. Crim. App. 2003); *Witt*, 237 S.W.3d at 399. An appellate court must presume that venue was proved unless it was challenged in the trial court or the record affirmatively demonstrates the contrary. TEX. R. APP. P. 44.2(c)(1); *Hernandez v. State*, 198 S.W.3d 257, 268 (Tex. App.—San Antonio 2006, pet. ref'd); *Blankenship*, 170 S.W.3d at 681; *Henley*, 98 S.W.3d at 734.

In reviewing a sufficiency challenge to proof of venue, we apply a modified version of the *Jackson v. Virginia* standard for legal sufficiency. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *see also Witt*, 237 S.W.3d at 399. In doing so, we view all the evidence in the light most favorable to an affirmative venue finding and ask whether any rational trier of fact could have found by a preponderance of the evidence that venue was proved. *See Witt*, 237 S.W.3d at 399 (citing *Duvall v. State*, 189 S.W.3d 828, 830 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Van Schoyck v. State*, 189 S.W.3d 333, 336 (Tex. App.—Texarkana 2006, pet. ref'd); *Lemoine v. State*, 85 S.W.3d 385, 387 (Tex. App.—Corpus Christi 2002, pet. ref'd)); *but see Sudds v. State*, 140 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting that venue will be upheld "'if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged'" (quoting *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964))).

## B.     Discussion

As stated above, Baker was charged with committing the offense of sexual performance of a child in Johnson County on or about February 14, 2009 in Count 2 and on or about March 19, 2009 in Count 3. Section 43.25 of the Texas Penal Code provides

that "sexual performance by a child" constitutes "any performance or part thereof that includes sexual conduct by a child younger than 18 years of age."  TEX. PENAL CODE ANN. § 43.25(a)(1).  Further, "sexual conduct" includes, among other things, "sexual contact" and "actual or simulated sexual intercourse."  *Id.* § 43.25(a)(2).  Here, Mercedes stated that Baker had sexual intercourse with her hundreds of times while she lived with Heidi and Baker in Johnson County.  She stated that the sexual encounters began six months after the initial incident occurred on August 15, 2005.  We recognize that Mercedes testified that she and Baker had sex forty to fifty times while the family lived in Florida from the latter part of 2008 to January 2009 and that Mercedes and Baker had sex ten or eleven times while the family lived in a Howard Johnson motel in Tarrant County from January 2009 to April 2009.  Mercedes further alleged that she had sex with Baker over forty times after she turned seventeen years old on June 14, 2008, including approximately thirty times after the family moved back to Johnson County from the Howard Johnson motel.  Clearly, Mercedes testified about numerous sex acts, occurring over a wide time frame, and at different locations.

In analyzing Baker's venue argument, we first note that the Texas Court of Criminal Appeals has stated that the State "is not bound by the date on or about which the offense is alleged to have been committed, and that appellant could have been convicted upon proof that the offense was committed any time within the period of limitation and prior to the return of the indictment."  *Williams v. State*, 565 S.W.2d 63, 64 (Tex. Crim. App. 1978).  Article 12.01 of the Texas Code of Criminal Procedure provides that for the offense of sexual performance by a child, the applicable limitations period

is: "if the investigation of the offense shows that the victim is younger than 17 years of age at the time the offense is committed," felony indictments may be presented within "20 years from the 18th birthday of the victim." TEX. CODE CRIM. PROC. ANN. art. 12.01(5)(A) (West Supp. 2012). Here, Baker was indicted on June 4, 2010, which is clearly within twenty years from Mercedes's eighteenth birthday. *See id.*

Because the State is not bound by the date on or about which the offense is alleged to have been committed, and because Mercedes testified that she and Baker had sexual intercourse many times in Johnson County around the time alleged in the indictment, we conclude that a factfinder could reasonably find by a preponderance of the evidence that Baker committed the offense of sexual performance by a child in the county alleged—Johnson County. *See Rippee*, 384 S.W.2d at 718; *see also Witt*, 237 S.W.3d at 399; *Duvall*, 189 S.W.3d at 830; *Van Schoyck*, 189 S.W.3d at 336; *Sudds*, 140 S.W.3d at 816; *Lemoine*, 85 S.W.3d at 387. And, to the extent that Baker argues that Mercedes testified that some of the many instances of sexual intercourse occurred on February 14, 2009 and March 19, 2009 at the Howard Johnson motel in Tarrant County, we note that it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Here, the jury, in convicting Baker on the two counts of sexual performance by a child, believed that the offense transpired in Johnson County, as alleged in the indictment. Thus, even if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *See*

*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In addition, Baker also appears to argue that the jury was misled by an instruction in the charge pertaining to venue. Specifically, Baker asserts that the State requested the following instruction, which allegedly represented a variance between the evidence and the charge pursuant to article 13.045 of the Texas Code of Criminal Procedure: "Our law provides an offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties." *See* TEX. CODE CRIM. PROC. ANN. art. 13.045 (West Supp. 2012) ("An offense punishable by fine only that is committed on the boundary, or within 200 yards of the boundary, of contiguous municipalities that have entered into an agreement authorized by Article 4.14(f) and Section 29.003(h), Government Code, may be prosecuted in either of those municipalities."). At the charge conference, Baker objected to the inclusion of this language, and the State argued:

> Yes, Your Honor. All the evidence is that this occurred in the city of Burleson. As well known, the border of the counties occur in the northern part of Burleson, so that potential for confusion is there, and that is a correct recitation directly from 13.04, and it's there only to prevent any potential confusion as to what the law is.

The trial court ultimately overruled Baker's objection.

We believe that any confusion that may have resulted from the inclusion of this paragraph is mitigated by Mercedes's testimony that she and Baker had sex many times in Johnson County around the time alleged in the indictment. Furthermore, we fail to see how the statute cited by Baker is even applicable in this case, considering article

13.045 applies to offenses punishable by fine only, not offenses, such as those here, that are subject to incarceration.[7] *See id.* Accordingly, we conclude that the complained-of error, if any, in the jury charge is harmless. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (holding that, when conducting a harm analysis with respect to purported charge error, reviewing courts should consider the charge itself; the state of the evidence, including contested issues and the weight of the probative evidence; arguments of counsel; and any other relevant information revealed by the record of the trial as a whole). We overrule Baker's first issue.

### III.    EXTRANEOUS-OFFENSE EVIDENCE

In his third issue, Baker contends that the introduction of extraneous-offense evidence caused harmful error with respect to all three counts contained in the indictment. Specifically, Baker complains about Stacy's testimony regarding other inappropriate conduct allegedly perpetrated by Baker. Baker argues this issue within the context of Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b).

### A.    Standard of Review

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If

---

[7] Article 13.04, on the other hand, provides that:

An offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties and any offense committed on the premises of any airport operated jointly by two municipalities and situated in two counties may be prosecuted and punished in either county.

TEX. CODE CRIM. PROC. ANN. art. 13.04 (West 2005).

the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344.

**B.      Texas Rule of Evidence 404(b)**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX. R. EVID. 404(b). But, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* Rebuttal of a defensive theory is one of the "other purposes" for which extraneous-offense evidence may be admitted under Rule 404(b). *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see Dennis v. State*, 178 S.W.3d 172, 180 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Baker argues that Stacy's testimony about his extraneous conduct constitutes improper propensity evidence and does not fall within the exceptions provided in Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b). On the other hand, the State argued at trial that Stacy's testimony about Baker's inappropriate actions, touching, and comments were indicative of a common plan or scheme. *See id.*

At trial, Baker's defensive theories centered on fabrication and that any sex between Baker and Mercedes was consensual. In particular, Baker offered the

testimony of Heidi regarding the initial incident. As noted earlier, Heidi disputed Mercedes's characterization of the incident and, instead, stated that Mercedes was merely tickling Baker while they both sat next to each other on the bed. Ostensibly, Baker's proffering of Heidi's testimony was to show that Mercedes had fabricated her testimony. In addition, defense counsel's cross-examination of Mercedes was directed at getting her to admit that any sex between Baker and her was consensual. Furthermore, defense counsel emphasized in closing arguments that any sex between Mercedes and Baker was consensual.

To rebut Baker's defensive theories, the State offered the testimony of Stacy, who stated that she witnessed many incidents whereby Baker acted inappropriately with Mercedes, including kissing her on the neck, spanking and pinching her "butt," and running his hands up Mercedes's legs. Stacy also recalled that Baker referred to Mercedes as a "cunt, a slut, a whore" and "sexy," even though Mercedes was just fourteen years old. Stacy later testified that Baker also acted inappropriately towards her. Stacy alleged that Baker grabbed her, spanked her in a sexual manner, ran his hands between her legs up to her crotch, and told her that she was almost hot enough to date and that he loved both Mercedes and Stacy more than he should. Finally, Stacy testified that Baker provided Mercedes and her with alcoholic beverages and cigarettes when Heidi was not home.

We do not believe that the trial court abused its discretion in admitting Stacy's testimony over Baker's Rule 404(b) objection because the testimony properly rebutted Baker's defensive theories. *See De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731;

*see also Williams*, 301 S.W.3d at 687; *Dennis*, 178 S.W.3d at 180. More specifically, Stacy's testimony showed that Baker acted inappropriately with other underage girls in the household and, thus, corroborated Mercedes's testimony and showed Baker's predilection for underage girls; or, in other words, Stacy's testimony amounted to proof of motive, opportunity, and common plan or scheme. *See* TEX. R. EVID. 404(b). Furthermore, Stacy's testimony rebutted Heidi's testimony that Baker had never acted inappropriately with Mercedes. *See Williams*, 301 S.W.3d at 687; *Dennis*, 178 S.W.3d at 180.

## C. Texas Rule of Evidence 403

With regard to his Rule 403 argument, Baker asserts that Stacy's testimony is so prejudicial as to have a strong tendency to suggest a decision on an improper basis or to confuse or distract the jury from the main issues in the case.

Texas Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When a Rule 403 objection is made and then overruled, the trial court has necessarily conducted a balancing test by considering and overruling the objection. *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (citing Yates v. State, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd)). In doing so, the trial court must balance (1) the inherent probative force of the proffered item of

evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Rule 403 favors admissibility, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g); *see Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

Based on our review of the evidence, we cannot conclude that the trial court abused its discretion in admitting Stacy's testimony over Baker's Rule 403 objection. *See* TEX. R. EVID. 403; *see also De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731. As previously noted, one of Baker's defensive theories was fabrication. Stacy's testimony was highly probative in that it corroborated Mercedes's testimony regarding Baker's inappropriate conduct towards Mercedes. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006) (noting that "probative value" refers to "how strongly [the proffered evidence] serves to make more or less probable the existence of a fact of consequence to the litigation . . . coupled with the proponent's need for that item of evidence"). Moreover, Stacy's testimony regarding Baker's treatment of her was also probative because it demonstrated a common plan or scheme with regard to Baker's treatment of underage girls in the household. In addition, the State needed Stacy's

testimony to rebut Heidi's assertion that nothing inappropriate had ever transpired between Baker and Mercedes.  We do not believe that Baker has adequately overcome the presumption that Stacy's testimony was more probative than prejudicial.  *See Gallo*, 239 S.W.3d at 762; *Montgomery*, 810 S.W.2d at 392; *see also Casey*, 215 S.W.3d at 880 (explaining that evidence might be unfairly prejudicial if "it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence").  Because we have concluded that the trial court did not abuse its discretion in admitting Stacy's testimony over Baker's Rule 403 and 404(b) objections, we overrule Baker's third issue.

### IV.  SUFFICIENCY OF THE EVIDENCE

In his second and fourth issues, Baker asserts that the evidence is insufficient to establish that he:  (1) induced sexual conduct as alleged in the two counts of sexual performance by a child; and (2) committed the offense of attempted sexual assault of a child, as alleged in Count 1 of the indictment.

### A.  Applicable Law

The Texas Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to

draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, as stated above, the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

**B.     Count 1:  Attempted Sexual Assault of a Child**

Section 22.011 of the penal code provides that a person commits the offense of sexual assault if he intentionally or knowingly "causes the penetration of the anus or

sexual organ of a child by any means" or causes the sexual organ or anus of a child to contact his sexual organ. TEX. PENAL CODE ANN. §§ 22.011(a)(2)(A), (a)(2)(C). Further, section 22.011 defines a "child" as "a person younger than 17 years of age." *Id.* § 22.011(c)(1). In count 1 of the indictment, Baker was charged with *attempted* sexual assault of a child. Section 15.01 of the penal code states the following with respect to criminal attempts: "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a) (West 2011).

As stated earlier, Mercedes testified that, on or about, August 15, 2005, she was in her room picking up puzzle pieces when Baker entered the room, pushed her onto the bed, pulled out his erect penis, and began trying to pull down her pants and panties. Mercedes noted that Baker only stopped because Heidi entered the room and began yelling at him.

To counter Mercedes's testimony, Baker called upon Heidi to testify on his behalf. Heidi stated that nothing inappropriate had ever occurred between Baker and Mercedes—testimony that was later undermined by Heidi's admission that Baker told her that he had sex with Mercedes previously and Baker's assertions that Mercedes was on top of him, rubbing herself on his penis when Heidi entered the room. With regard to the initial incident, Heidi recalled that, when she entered the room, Baker was lying on Mercedes's bed and that Mercedes was sitting next to Baker and tickling him.

Intent may "be inferred from circumstantial evidence[,] such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App.

2004); *see Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984) (noting that the requisite culpable mental state may be inferred from the surrounding circumstances). The jury, in convicting Baker of attempting to sexually assault Mercedes in the initial incident, clearly believed Mercedes's version of the story, rather than Heidi's, which it was entitled to do. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326; 99 S. Ct. at 2792-93. And, we are to defer to the jury's resolution of inconsistencies in the evidence. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that Baker attempted to sexually assault Mercedes in the initial incident. *See* TEX. PENAL CODE ANN. §§ 15.01, 22.011; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we hold that the evidence is sufficient to support Baker's conviction for attempted sexual assault of a child. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13.

**C.     Counts 2 and 3:  Sexual Performance by a Child**

With regard to Counts 2 and 3, under a hypothetically-correct jury charge, the State was required to prove beyond a reasonable doubt that Baker, "knowing the

character and content thereof" employed, authorized, or induced a child younger than eighteen years of age to engage in sexual conduct or a sexual performance. TEX. PENAL CODE ANN. § 43.25(b). "Sexual conduct" constitutes, among other things, "sexual contact" and "actual or simulated sexual intercourse." *Id.* § 43.25(a)(2).

Here, Baker argues that the evidence is insufficient to establish that he "induced" Mercedes to engage in sexual intercourse. Both Baker and the State acknowledge that the penal code does not define "induce." Accordingly, we must give the term its usual meaning. *See Garcia v. State*, 887 S.W.2d 846, 859 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1005 (1995); *see also Alexander v. State*, 906 S.W.2d 107, 111 (Tex. App.—Dallas 1995, no pet.) ("In the absence of a statutory definition, words are to be taken and understood in their common and ordinary meanings."). We adopt the common meaning of "induce," which is "to move by persuasion or influence." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 594 (10th ed. 1993); *see Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. ref'd) ("In this case[,] the parties agree on the same basic definition of induce: to move and lead by persuasion or influence."); *Dornbusch v. State*, 156 S.W.3d 859, 866 (Tex. App.—Corpus Christi 2005, pet. ref'd) ("We adopt the word's meaning in common usage . . . which is to move by persuasion or influence or to bring about by influence." (internal citations & quotations omitted)); *see also* BLACK'S LAW DICTIONARY 622 (7th ed. 2000) (defining "inducement" as "[t]he act or process of enticing or persuading another person to take a certain course of action").

The evidence shows that Baker used his parental authority over Mercedes to "induce" or persuade her to have sex with him. Though he is not Mercedes's biological

father, several witnesses testified that Baker treated Mercedes as if she was his own, including making and enforcing household rules. Furthermore, Mercedes testified that Baker told her that if she did not have sex with him, he would tell Heidi and that Heidi would hate her and kick her out of the house. *See Dornbusch*, 156 S.W.3d at 867 ("We conclude that a scenario such as this, where a person of authority creates a situation in which a teenager would find it almost impossible to deny a sexual advance, can be fairly considered to constitute inducement in the common understanding of the term"). Baker also told Mercedes that if she did not have sex with him, she would not get to see her brothers and sisters, whom she loved dearly, again. *See id.* Mercedes believed that she did not have any choice but to have sex with Baker. Moreover, it was undisputed at trial that the allegations contained in Counts 2 and 3 of the indictment occurred when Mercedes was seventeen years old.

Based on the foregoing, we conclude that a rational factfinder could have concluded beyond a reasonable doubt that Baker "induced" or persuaded Mercedes, a person younger than eighteen years old, to have sexual intercourse on or about the dates alleged in Counts 2 and 3 of the indictment. *See* TEX. PENAL CODE ANN. § 43.25(a)(2), (b); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we hold that there is sufficient evidence to support Baker's convictions in Counts 2 and 3.[8] *See Jackson*, 443 U.S. at 318-19, 99 S.

---

[8] And to the extent that Baker argues that the evidence supporting his convictions in Counts 2 and 3 is insufficient because Mercedes allegedly consented to sexual intercourse, we note that "[t]he notion that an underage child cannot legally consent to sex is of longstanding origin and derives from the common law." *In re B.W.*, 313 S.W.3d 818, 820 (Tex. 2010) (citations omitted). Moreover, we also find the following analogy contained in the *Dornbusch* case to be persuasive:

Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Baker's second and fourth issues are overruled.

## V. CONCLUSION

Having overruled all of Baker's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 8, 2012
Do not publish
[CR25]

---

Whether or not consensual sex with a seventeen-year-old is a crime under section 21.11 does not control the interpretation of an entirely different offense in a different section of the penal code. Sections 21.11 and 43.25(b) are not in direct conflict and do not have to be considered together: section 21.11 does not legalize consensual sex with a seventeen-year-old; it merely does not allow such an act to be prosecuted as indecency with a child.

*Dornbusch v. State*, 156 S.W.3d 859, 871 (Tex. App.—Corpus Christi 2005, pet. ref'd) (internal citations omitted). As such, just because other sections of the penal code suggest that a seventeen-year-old can consent to sexual intercourse, the plain language of section 43.25(b) authorizes the prosecution of those who induce persons younger than eighteen years old to, among other things, have sexual intercourse. *See* TEX. PENAL CODE ANN. § 43.25(b) (West 2011). We therefore find Baker's consent argument to be irrelevant to our analysis of this issue.